## RADKE *v.* SCHLUNDT.

[No. 4,230.   Filed December 19, 1902.]

HUSBAND AND WIFE.—*Wife's Torts.—Personal Injuries.—Negligence.— Master and Servant.*—A wife is not the servant of her husband in such sense as to render the husband liable for a personal injury inflicted by her while engaged in the use of her husband's personal property in the performance of her duty as a wife, in domestic service for herself and her family, including her husband, not in his presence, nor by his direction, but by her trespass through her negligent use of such property.

From Laporte Superior Court; *H. B. Tuthill,* Judge.

Action by Louis Schlundt against August Radke and wife for personal injuries. From a judgment for plaintiff, defendant August Radke appeals. *Reversed.*

*J. F. Gallaher,* for appellant.

*M. T. Krueger, C. R. Collins* and *J. B. Collins,* for appellee.

Radke *v.* Schlundt.

BLACK, P. J.—The appellee recovered against the appellant and his wife for personal injury suffered by the appellee through the negligent driving against and over him by the appellant's wife of a horse and vehicle owned by the appellant. The court overruled the appellant's separate demurrer to the amended complaint, and his separate motion for a new trial, and he assigns these rulings as errors. The appellant filed a bill of exceptions containing the official reporter's longhand manuscript of the evidence and instructions given and instructions asked and rejected. In the transcript of the record in this court this bill of exceptions is a clerk's transcript of the bill filed, including the instructions and the judge's certificate, except that the original longhand manuscript of the official reporter, and not a transcript thereof, is contained in the bill. This is not a proper presentation to this court of the evidence, and, though the instructions given and those refused are in the record on appeal, we can not consider the latter because of the absence of the evidence, and we would be authorized to reverse the judgment because of error in instructions given only in case we should find one or more of them improper under any evidence that might have been introduced properly on the trial. See *South Chicago City R. Co.* v. *Zerler* (Ind. App.), 65 N. E. 599.

Though we are of the opinion that the complaint does not state facts sufficient, we deem it not improper to discuss the merits as they appear in it, and the instructions given. In the amended complaint it was shown that on July 27, 1900, the appellee was an employe of the city of Michigan City, and his duties as such were to work in the streets of the city in keeping them clean; and he was acting as such employe in cleaning a street known as Franklin street; that the defendant Pauline Radke, wife of the appellant, on that day, "as the servant of her codefendant, was driving along said street in the said city, in a certain wagon drawn by one horse, which said wagon and horse were possessed by

said defendant August Radke [the appellant]; that the said wagon and the said one horse were possessed by the said defendant August Radke, and were being driven by said defendant Pauline Radke, who is the wife of her said codefendant, and she was so driving as such servant at the time hereinafter specified; that the said defendant Pauline Radke, as such servant, she being the wife of her said codefendant, so carelessly, negligently, improperly, and immoderately drove and managed the said horse and wagon, that; by reason of said negligence and carelessness and improper and immoderate driving, said wagon and horse struck and trampled" the appellee, and threw him upon the ground, and the horse and wagon otherwise injured the appellee, whereby he was bruised and wounded, etc.,—his injuries, loss of occupation, and expenses being set forth in detail,—to his damage, etc., wherefore, etc.

In its instructions the court stated that if the appellant's wife started with a horse and buggy owned by the appellant, from the home of the defendants, on the morning in question, for the purpose of selling or delivering butter or eggs or other produce raised on her husband's farm, and while making such trip the injury was done to the appellee, a presumption would arise from such a state of facts that she was the servant of the appellant; that the wife, in taking such property of her husband to town for sale, acts as his agent or servant in the prosecution of that business; that if it was her habit to use the money she obtained from the sale of such property in the purchase of groceries, provisions, merchandise, or other articles necessary for the proper conduct of the establishment, such fact would not change the relation of master and servant otherwise existing between the parties; that if appellant's wife started to town on the day in question with produce of her husband, and sold the same, and then, in the general course of her employment, returned home, she all the time driving the horse and buggy belonging to appellant, then any act of negli-

gence committed by her in the course of such proceeding would be his negligence, if committed in the general course of business; that the term servant, as used in the complaint, and by the court in the instructions, is a legal term, and does not mean or designate a domestic or menial servant, but means and designates a person who is doing work or performing a service for or in place of another, and that it is competent for a wife to be a servant of her husband; that the existence of the marital relation between the defendants was immaterial, if she was in the employment of her husband, and acting for him and in his stead; that if the act was done by her in the prosecution of his business, he was not relieved from responsibility by her departure from his instruction in the manner of doing it; that the test of his responsibility for her acts was not whether the act was done according to instructions from him, but whether it was done in the prosecution of his business, which she at the time was doing.

The injury of the appellee was inflicted by an act in the nature of a trespass, being a forcible injury wrongfully caused by the act itself complained of. At common law trespass would lie for a direct and violent injury, whether inflicted through negligence or intentionally. And from the time of the decision in *Williams* v. *Holland,* 10 Bing. 112, case was also a legal remedy for such an injury occasioned by carelessness, but not if wilfully done. *Schuer* v. *Veeder,* 7 Blackf. 342.

"Trespass is proper, where the injury is by the direct act of the party, whether done wilfully or negligently. Force directly applied is the criterion." *Strohl* v. *Levan,* 39 Pa. St. 177-185.

It is said in Chitty, Pleading (14th Am. ed.), 131, that "Though a master be liable under the circumstances to compensate an immediate injury committed by his servant, in the course of his employ, with force; yet the action against

the master in general must be case, though against the servant it might for the same act be trespass."

Though a joint action will now lie against a master and his servant for a personal injury caused by the negligent act of the latter, in the absence of the former, in the course of the employment (*Wright* v. *Compton,* 53 Ind. 337; *Phelps* v. *Wait,* 30 N. Y. 78), yet the nature of the tort of the servant in such case, in view of the common law, is that of a trespass *vi et armis,*—as much so as is an assault and battery,—while the liability of the master, which does not seem to be illustrated in any early authority, the importance of the rule belonging altogether to modern law (Webb's Pollock on Torts (Am. ed.), 89), rests upon the obligation of one in the conduct of his affairs, under his orders, by another, for lack of due regard to the safety of third persons. It is often sought to express the obligation of the master by the maxim, *respondeat superior,* and sometimes by the maxim *qui facit per alium, facit per se.*

In the court below, the case was presented as one involving responsibility of the husband, as master, for the personal injury caused by the negligent act or trespass of the wife as a servant. She is represented as driving her husband's horse and carriage on her return from a trip to the market-town from her husband's farm, where she resided with him; the occasion of her trip to town being the marketing of such farm products as are usually under the supervision and control of the farmer's wife, and the purchasing of articles for family use; the business of her trip relating to domestic matters.

The development of the law of torts has been historical, and, to a considerable degree, dependent upon accident. It has to some extent been affected by changes in the system of pleading, and has received large additions from the access of theories from the civil law relating to master and servant and principal and agent. The primitive rules of the common law relating to husband and wife, of insular

and largely independent growth, have not remained wholly unaffected by the influence of the civil law, and they have been largely changed by modern legislation.

The relation of husband and wife has been and still is a peculiar relation; and the terms applicable to other relations, while employed concerning that of husband and wife, are not always understood in the same sense as when applied to other relations. Thus, marriage is called a contract; but that term, when so applied, has some suggestion of the poverty of the language, when the relation of husband and wife is compared to other legal relationships, as that of landlord and tenant, or that of master and servant, in which the parties, if they so desire, may fix by agreement their rights and obligations as to each other, whereas, in the relation entered upon by marriage the rights and duties of the parties are prescribed by law. While at common law the wife could not in any manner subject herself to liability on contract, she was liable for her own torts. The rule of the common law as to her capacity to make contracts is so far modified as to enable her to enter into a contract as the agent of her husband when he has given her authority to bind him expressly, or by holding her out as having such authority. She is presumed as a matter of law to have authority to bind him by her contract so far as necessary to realize her right of support, but in other respects her authority is a matter of fact, and not of presumption. Jones, Evidence, §262; Stewart, Husband and Wife, §89.

In all statements of her common law responsibility for her torts there is much similarity to the rules relating to her liability for lesser crimes; and there is a strong intimation of the notion of moral delinquency akin to that in penal offenses, suggestive of the early period in the history of our law when the rules relating to a wife's torts were settled upon. In *Cassin* v. *Delany*, 38 N. Y. 178, it was said: "The authorities are clear, that when a tort or a felony of any inferior degree is committed by the wife in the

presence and by the direction of her husband, she is not personally liable." See, also, *Handy* v. *Foley,* 121 Mass. 259.

While in the reports and text-books there is frequent mention of the subject of the wife's agency for the husband in the making of contracts, the rules of the common law relating to the husband's responsibility for his wife's torts do not refer it to the principles of the law of master and servant, and the various reasons on which it is sought to base such rules are such as particularly apply to the peculiar relationship of husband and wife under the law.

At common law the wife was entitled to support from her husband, and incidentally to his service by way of furnishing such support, but not otherwise, while he was entitled to her time, services, and all the products of her labor. The rights of the wife and husband were not based upon the theory that either was the servant of the other. Unity in the marriage relation was at the basis of conjugal rights and duties. The husband was the head of the family, and the wife was under coverture. He, either alone or jointly with her, was liable for her torts. His sole liability arose out of the commission of the tort in his presence under his coercion, actual or presumed, a presumption not indulged in favor of a servant; and if it appeared that she acted freely in his presence, they were both liable. If committed out of his presence but by his direction, both were liable. But if committed in his presence against his will, or out of his presence and without his knowledge or consent, he was, in either such case, liable, not upon any theory of guilt on his part, but as her husband; though his liability was a limited one, and, unless fixed by judgment, ceased with the dissolution of the marriage, and she alone remained liable. See Schouler, Husband and Wife, §§134-136; Stewart, Husband and Wife, §66.

"At common law a husband is liable for the frauds and other torts of his wife, whether they were committed before

marriage, or during coverture. One of the reasons for this doctrine was that the unity of husband and wife rendered the wife incapable of being sued alone. Her husband had to be joined in all actions against her. Another reason was that the husband became the absolute owner of his wife's personal property, and had the right to receive her earnings, and the rents and profits of her real estate, so that it was only just to hold him liable for her torts. Another consideration was that he should not permit her to commit torts. The liability, however, was not based on any idea that he was himself guilty of her torts, even in contemplation of law. The liability exists even where the husband is separate from his wife, so long as the marriage has not been dissolved." Tiffany, Per. & Dom. Rel., 60, 61.

Judge Cooley, referring to statutes which only purported to secure married women their property and earnings, and the full control and enjoyment thereof, but were silent as to her torts, said: "Certainly the reasons on which the new legislation proceeds are such as should leave the wife to respond alone for her torts, for they assume that she is fully capable of controlling her own actions, and can and will act independently of her husband." Cooley, Torts, 118. See, also, *Martin* v. *Robson,* 65 Ill. 129, 16 Am. Rep. 578; *Choen* v. *Porter,* 66 Ind. 194.

Our statutes have gone further. An act of 1881 provides: "Married women, without reference to their ages, shall be liable for torts committed by them; and an action may be prosecuted against them for torts committed, as if unmarried. Husbands shall not be liable for the contracts or torts of their wives." §6965 Burns 1901.

Also, "Whenever a married woman commits a tort by the direction of her husband, or in his presence with his consent, they shall be jointly liable therefor." §6966 Burns 1901.

We also have among our many modern statutory changes of the common law relating to married women, a statute of

1879 providing: "The earnings and profits of any married woman, accruing from her trade, business, services or labor, other than her labor for her husband or family, shall be her sole and separate property." §6975 Burns 1901.

It is proper to treat these statutes as we treat other statutes which are modifications of the common law; that is, while construing them liberally for the purpose of giving them their full remedial effect, yet, as they are in derogation of the common law, we should regard the rules and principles of the common law which they affect as being still in force, except so far as the modern statutes are antagonistic thereto, or except so far as the common law principle must yield in order to give full effect to the purposes of the statutes. See *Haas* v. *Shaw,* 91 Ind. 384, 46 Am. Rep. 607.

Under the law of this State as it was prior to 1881, husband and wife were jointly liable in damages for the torts of the wife. *McCaslin* v. *State, ex rel.,* 99 Ind. 428, 442. In *McCabe* v. *Berge,* 89 Ind. 225, it is said that marriage is a *status* or relation; and that the common law liability of the husband for the torts of his wife was merely an incident of the marriage relation or *status.*

In *Weber* v. *Weber,* 47 Mich. 569, 11 N. W. 389, a married woman was sued alone in case for her false representations to the plaintiff concerning the freedom from encumbrance of certain land which she sold to the plaintiff as agent for her husband. It did not appear that the representations were made at the husband's request or by his authority. Under an objection that the husband should have been joined as a defendant, the court said: "At common law the husband was liable personally for his wife's torts, and she could not be sued without him. But under our statutes now, that liability has been abolished, and she is solely responsible for them. * * * This being the case, we can see no ground for joining them in a suit, unless both are sued as wrongdoers."

In *Citizens St. R. Co.* v. *Twiname,* 121 Ind. 375, 7 L. R. A. 352, it was said that §6975 Burns 1901, in part quoted above, "in no way changes the relation between husband and wife. It neither attempts to exonerate her from the performance of any proper services for the benefit of the husband, either in the household or in his business, nor does it attempt to create any liability on the part of the husband to pay for such services. * * * The wife has the same right to give to her husband her services either in the household or in his business as she had before the passage of the statute, and the same obligation rests upon her to discharge her duty to her husband, and upon the husband to discharge his duty and obligation to his wife, as it did before its passage." See, also, *Board, etc.,* v. *Brown,* 4 Ind. App. 288; *Hensley* v. *Tuttle,* 17 Ind. App. 253; *Kedey* v. *Petty,* 153 Ind. 179.

In the case last cited, the court deprecated a doctrine that a wife's dominion over the domestic dairy and poultry products, and the fund arising therefrom, with the husband's assent, constituted her separate business, within the meaning of §6975 Burns 1901. The husband's obligation to support his wife still continues. Her obligation to render family services continues, and is coextensive with his obligation to support her. *Randall* v. *Randall,* 37 Mich. 563.

At least, if she does render services for the family, they would not create an obligation on her husband's part to compensate her therefor, aside from the support which it is his duty to furnish her; and however insufficient the law in its appliances for enforcing the performance of domestic services by the wife, if she does render such service it is to be regarded as the performance of a common law duty as a wife, and is not referable to any rule or principle peculiar to the law of master and servant. The husband is still the head of the family, and the wife is still his helpmeet.

Many considerations stand in the way of applying, as was here attempted, the rules pertaining to the relation of

Radke *v.* Schlundt.

master and servant to that of husband and wife. When it is sought to charge one, as master, with the negligence of another as the servant of the former, resulting in injury to a third person, the person whom it is sought to charge must have had both the power and the duty to control the action of the person alleged to be his servant in the transaction or act in question, out of which the injury arose. If it was not the duty of one to control another whose negligence occasioned the injury, the latter was not a servant, and the former is not responsible, unless in certain cases he should render himself liable by adopting and ratifying the act. Ordinarily the relation of master and servant involves such a right of control as implies a right to discharge from the service or employment for disobedience.

For the purpose of charging the defendant as a master with injury of the plaintiff through negligent use of the defendant's property by a third person, it is not enough that such third person was at the time in possession of the property, with the assent of the defendant; but he must have been in the employment or service of the defendant, and under his control therein.

If there has been a recovery of damages from the master by reason of the servant's negligence in doing the master's work or in executing his orders, the master may recover over from the servant. Addison, Torts (3d ed.), 24; Cooley, Torts, 145; Wharton, Negligence (2d ed.), §246.

If the action would lie, the complaint was insufficient for the want of a statement of facts showing that the person alleged to have been driving the horse and wagon as a servant was engaged at the time of the injury in the employment or service of the defendant, and acting within the scope of the employment. See *Snyder* v. *Hannibal, etc., R. Co.,* 60 Mo. 413. See, also, *Story* v. *Downey,* 62 Vt. 243, 20 Atl. 321; *Curtis* v. *Dinneen,* 4 Dak. 245, 30 N. W. 148.

Our statutes, framed with reference to the preëxisting rules of the common law, and expressed in terms correspond-

ing with those employed in those rules, make the husband and wife jointly liable for torts committed by the wife by direction of her husband,—whether the tort be committed in his presence or not,—and for torts committed by her in his presence with his consent. He remains liable for his own torts. We will not anticipate questions which may arise concerning torts committed by the wife in his presence through his coercion. For a tort committed by the wife, as was the trespass here involved, not in the presence of the husband or by his direction, she is liable, and the action is to be prosecuted against her as if unmarried; and the husband is not liable, unless it can be said that he may be liable as a master.

Confining our decision to the facts here involved, we are of the opinion that where the wife is engaged in the use of her husband's personal property in the performance of her duty as a wife in domestic service for herself and her family, including her husband, not in his presence, he is not liable for a personal injury inflicted by her, not by his direction, but by her trespass through her negligent use of such property.

Through statutory modifications of the common law, our system of law concerning husband and wife has advanced, as did the law of Rome, toward the conferring of independence upon the *feme covert*. The relation has not come to be one of partnership or of master and servant. In her conduct in the management of the affairs within her proper domestic sphere while she is performing her duties as wife, much the same as at common law, she acts with a discretion which does not belong to one standing in the relation of a servant, and is liable for her torts therein as if sole, and her husband is not liable.

Judgment reversed as to the appellant, and cause remanded with instruction to sustain his demurrer to the amended complaint.