CLEM ET AL. *v.* BROWN.

168

(No. 19295—Decided May 14, 1965.)

*Messrs. Stroup & Walters* and *Mr. Harvey E. Hyman,* for plaintiff.
*Messrs. Drury & Ziegler,* for defendant.

HITCHCOCK, J. Defendant has filed a motion to strike the words from plaintiff wife's alleged second cause of action reading "she has lost his services and consortium."

As plaintiff husband is suing for his own loss of earnings and he is duty bound to support his wife insofar as he is able, the motion is sustained as to the words "services and".

The loss of consortium is, however, a different thing. There is no doubt that the law in Ohio has been that every husband has always enjoyed the benefit of an action for the loss of the consortium of his wife, whether that loss has been caused by negligent or intentional conduct, but every wife has been limited to the benefit of an action for the loss of the consortium of her husband only if caused by malicious or intentional conduct (from which malice might be inferred). *Flandermeyer* v. *Cooper* (1912), 85 Ohio St., 327; *Smith* v. *Nicholas Bldg. Co.* (1915), 93 Ohio St. 101; *Kelly* v. *Bouche* (1941), 21 Ohio Ops. 244, 6 Ohio Supp. 327.

In what I deem two of the most scholarly judicial expositions of this subject the Supreme Court of Oregon has explored this matter and has in *Eling* v. *Blake-McFall Co.,* 85 Ore. 91, 166 P. 57 (1917), said.

"It is submitted on behalf of defendant that the plaintiff husband cannot recover for the loss of consortium of his wife due to the negligence of the defendant. In its charge to the jury the trial court limited such loss, if any, to the time interven-

ing between the injury and death of the wife. *Marri* v. *Stamford St. R. Co.*, 84 Conn. 9, 70 A. T. L. 582, 33 L. R. A. (N. S.) 1042, Ann. Cas. 1912B, 1120, is among the authorities supporting defendant's position. The rule enunciated there is not in harmony with the great weight of authority.

"* * *

"Compensation for the loss by a husband of consortium of his wife is to be determined, not from the direct evidence of its value, but by the jury from their observation, knowledge, and experience, *Union Pac. Co.* v. *Jones*, 21 Colo. 340, 40 Pac. 891."

In *Sheard* v. *Oregon Electric Ry. Co.* (1931), 137 Ore. 341, 2 P. 2d 916, the court in an opinion by Judge Rossman denied a widow relief for the loss of the consortium of her husband whose injury and subsequent death occurred through the negligence of the defendant, citing and relying in part on *Smith* v. *Nicholas Bldg. Co., supra.*

This widow's chief contention was that the Oregon Married Women's Act had necessarily effected a change in the common-law rule. After a review of the history of this statute and the common-law cause of action to a husband for the loss of the consortium of his wife the court concluded that "a married woman's act * * * confers no new right of action, but only the power to sue for the protection of the rights which she already had * * *."

And also, "* * * whether an intentional injury should be dealt with differently from one inflicted by a negligent act, are subjects for legislative determination and no longer for judicial attention. It is interesting to note, however, that in some states unlike our own the effect of the Married Women's Act has destroyed the husband's right of an action for loss of consortium * * *."

Were we to stop here we would, of course, sustain the motion to strike, the Ohio Married Woman's Act, 84 O. L. 132 (1897), now Sections 3103.01 to 3103.08, Revised Code, and other sections, having even less to say about this precise problem than the Oregon statute.

We, live, however, under the Constitution of the United States as interpreted by the Supreme Court of the United States. Although I have expressed my personal bewilderment

in respect to recent interpretations of that document in respect to federal-state areas of authority and their relationship one with another, I perceive that my oath of office requires me to apply the prevailing precedents to concrete cases. Lincoln, it seems to me, well put the case for lovers of freedom under law, when he said a century ago, upon the eve of the greatest revolt our land has seen, "We must have a Supreme Court and respect its decisions but I think Dred Scott is wrong."

Section 1 of the 14th Amendment reads in part ". . . nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws."

It is now decided that this means that the citizens of the several states, no matter what any majority of them may think, are obligated to create districts approximately equal in population, for representatives to both houses of each state legislature that have them, or to any single legislative body a state may have. *Reynold* v. *Sims* (1964), 377 U. S. 533, 12 L. Ed. 2d 506.

It is now decided that state convictions for criminal trespass upon the premises of a private amusement park, if occasioned because the owner excluded the trespassers only on the basis of their race, cannot stand because of equal protection. *Griffin* v. *Maryland* (1964), 378 U. S. 130, 12 L ed 2d 754.

This same section of the 14th Amendment also provides that: " . . . nor shall any State deprive any person of life, liberty, or property without due process of law; . . . ". It is now decided that this means that one convicted, in a state court, by a unanimous jury, of murder upon proof beyond a reasonable doubt, pursuant to procedures recognized for centuries in the English speaking world as lawful, is denied due process if deprived of counsel at that point where the police investigation reaches the place where responsibility for the life destroying act begins to focus on one under suspicion. *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 12 L. ed. 2d 977.

Try as I will, my mind—probably more obtuse than it should be for one in my position—can only account for this result by assuming that those responsible for the prevailing opinion are acting upon some major premise, to date unarticulated, roughly the equivalent of saying that whenever policemen fail to accord full grown rattlesnakes the gentle handling

humane people give day old baby chicks, due process is denied.

It is now decided that the 14th Amendment makes the 5th Amendment applicable to the states, *Malloy* v. *Hogan* (1964), 378 U. S. 1, 12 L. ed. 2d 653. And that although the 5th Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process—such that an Act of Congress providing for denationalization of a naturalized citizen residing continuously for three years in the county of his birth is unjustifiably discriminatory and enforcement of the Act will be enjoined. *Schneider* v. *Rusk* (1964), 377 U. S. 163, 12 L. ed. 2d 218.

I call attention to the due process clause only because it has lately been invoked to free convicts from responsibility for proven crimes even where the successful appellant has been one with an unsullied and well established general reputation for open thuggery or long continued criminal activity. Consequently, I must conclude that the protecton of the 14th Amendment is no less available to Ohio's virtuous wives or to those without virtue for that matter.

So the question clearly is whether or not the Ohio rule that a husband may recover for the loss of the consortium of his wife caused by negligence but that a wife may not recover for the loss of the consortium of her husband caused by negligence deprives the plaintiff wife here of the "equal protection of the law." I hold that it does.

Returning to Judge Rossman's opinion, I find myself in complete agreement with the first sentence of the penultimate paragraph reading:

"Viewing the above in a purely abstract manner, it would seem that in a wife's demand for damages for loss of consortium through the negligent injury of her husband the loss sustained by her is no more remote and consequential than the loss sustained by a husband whose wife is similarly injured."

This view leads me to consider the history of this seemingly peculiar rule that what is actionable to the husband is not actionable to the wife and Judge Rossman does not fail to tell us:

"The reason why at common law a husband could recover for loss of consortium, but his wife could not, is historical in character. In the bygone generations when the customs, con-

172

duct, and belief of the English people were crystallizing themselves into the rules of human conduct which are now known as the common law, a woman was not regarded socially or civilly as the equal of her husband. He had the right to her labor and services. It was her duty to administer to him in all relations of domestic life, including the rearing of his children and the maintenance of his household. Marriage operated as a suspension for most purposes of the legal existence of the wife. In those days husband and wife were regarded as one—and he was that one. That contemplation of the status of a married woman created her various disabilities; her inability to contract, to maintain an action in her own name, etc. With much truth it has been said that in those bygone days the relationship between husband and wife was that of liege lord and his vassal. Such being the manner in which the law regarded husband and wife, it can readily be understood why a husband could maintain an action for the loss of the consortium of his wife without there being available to the wife a similar action. Blackstone tells us (3 Blackstone [Lewis' Ed.] p. 143), that at common law notice was taken of only the wrongs done to the superior of the parties related and that the loss of the inferior was totally disregarded. The reason, according to Blackstone, was 'the inferior hath no kind of property in the company, act, care or assistance of the superior, as the superior is held to have in those of the inferior; and therefore, the inferior can suffer no loss or injury.' "

Given the premises, we may admire this precise reasoning after the manner of Aristotle and Euclid but my observations in the days of my bachelorhood and through nearly a quarter century of marriage to one woman tell me these premises have in Ohio been extinct for several generations.

In *Mayer* v. *Town of Brookline* (1959), 339 Mass. 209, 158, N. E. 2d 320, it is held that "equal protection of the laws" requires that all persons similarly situated be treated alike although it does not prohibit differences in treatment where there is a basis for those differences reasonably related to the purpose which state laws and/or rules and regulations seek to accomplish. It seems evident to me there are today no factual differences justifying a continuation of the Ohio rule denying only to wives and not to husbands a cause of action for loss of

consortium caused by negligent injury occasioned one's spouse.

Rawle's Revision of Bouvier's Law Dictionary (1897) states that consortium means, among other things, "Company, companionship." and makes note, "It occurs in this last sense in the phrase *per quod consortium amisit* (by which he has lost the companionship), used when the plaintiff declares for any bodily injury done to his wife by a third person. 3 Bla. Com. 140."

I am not unmindful of the fact that Article I of the Ohio Constitution provides:

"Section 2. All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the genral assembly."

Nevertheless, all precedents which I have been able to find indicate that Ohio courts have ever viewed the question here for decision as one for legislative rather than judicial action, as did the Supreme Court of Oregon. But as Ohio's constitution must yield to that of the United States as the supreme law of the land, I omit discussion of what our state Constitution should mean in these circumstances as pointless.

Assuming that there are such things as happy marriages I must conclude that if negligent injury to the wife raises a cause of action in consortium to the husband, equal protection requires a similar cause of action to the wife for negligent injury to her husband. Consequently the motion to strike the words "she has lost his consortium" is overruled.

*Motion overruled.*