### TROUE v. MARKER.

[No. 468A59. Filed July 15, 1969. Rehearing denied September 20, 1969. Transfer granted December 9, 1969.]

112

*Peters & Peebles,* of Fort Wayne, and *Jack R. Notestine,* of counsel, of Fort Wayne, for appellant.

*Robert Robinson, Robert Hollowell, of Indianapolis,* and *Hollowell & Robinson,* of counsel, of Indianapolis, *Bloom & Bloom,* of counsel, of Columbia City, for appellee.

HOFFMAN, J.—The issue presented by this appeal is whether or not the doctrine of denying a wife a recognized cause of action for loss of the consortium of her husband should be abrogated or sustained.

Appellant's husband was severly injured in an automobile accident precipitated by the allegedly negligent driving of defendant-appellee, Franklin Marker. Appellant alleged in her complaint that as a result of the accident her husband was hospitalized for 159 days during which time he underwent surgery seven times; and that after being released he re-

turned to the hospital four more times for corrective surgery necessitated by his injuries.

As a result of these injuries and hospitalization, plaintiff-appellant alleged damages in her complaint in rhetorical paragraphs 4, 5 and 6, as follows:

"4. As a result of the foregoing, it has been necessary for Plaintiff to take a job, thus taking her away from her two children, and preventing her from maintaining the home for her family as she had been used to in the past. As a further and proximate result of said negligence of Defendant, Plaintiff has undergone mental anguish by being forced to witness the suffering and inactivity endured by her husband, whereby her own nerves and health have been seriously weakened and impaired, and by reason of the physical condition of her husband, she still continues to suffer in mind and body and has been denied the care, protection, consideration, companionship, aid and society of her husband, and the pleasure and assistance of her husband of escorting her to visit friends and relatives, and has been required to remain at home or at her job for long periods of time, denying herself to friends and relatives.

"5. By reason of the said injuries, Plaintiff's husband, Roemer H. Troue, was unable to work and to follow his usual vocation, and thereby since the first day of October, 1965, to the present time, has lost wages from which Plaintiff and her family would otherwise have derived benefits, in [the] sum of Twelve Thousand Seven Hundred Twenty-Four ($12,724.00) Dollars, and will permanently continue so to lose income because of said injuries; to offset such lost income, Plaintiff and her family were for a time forced to apply for welfare payments, which was extremely embarrassing to Plaintiff and her family, and thereafter, Plaintiff's income was supplemented by social security payments by reason of the disability of her said husband. Plaintiff's income during this period was Three Hundred ($300.00) Dollars during calendar year 1965; Three Thousand Seven Hundred Forty-Five ($3,745.00) Dollars during calendar year 1966, and is anticipated to be Four Thousand Two Hundred Thirty-Three ($4,233.00) Dollars, during calendar year 1967.

"6. In addition thereto, Plaintiff's husband has incurred medical expenses in the approximate sum of Ten Thousand ($10,000.00) Dollars, over and above that which has been covered by insurance, and will continue to incur medical

bills and expenses, thereby reducing that portion of his income which could otherwise be devoted to Plaintiff and her children."

Defendant-appellee filed an amended demurrer to the complaint on two grounds: 1) That the complaint does not state facts sufficient to constitute a cause of action; and 2) That the plaintiff has no legal capacity to sue.

The trial court sustained the amended demurrer as to specification one and overruled it as to specification two. Plaintiff-appellant refused to plead over and judgment was thereafter entered on the demurrer. This appeal followed.

Appellant has assigned three spcifications of error, as follows:

"1. The Court erred in sustaining the demurrer of Appellee to Appellant's complaint.

"2. Decision of the court is contrary to law.

"3. The court denied Appellant the equal protection of the law and due process of law guaranteed her by the United States Constitution and applied to the States by the Fourteenth Amendment as well as deny her the due course of law and administration of justice and equal privileges guaranteed her by the Constitution of the State of Indiana."

The question in this appeal has been presented to us in singular form. Our consideration is limited, in effect, to an examination of the power and scope of the judicial prerogatives granted to this court by the General Assembly and our Supreme Court. This is so, because, as the appellant readily admits, the ruling precedents are *contra* to her position.

The exact same issue was presented to this court in *Miller v. Sparks*, 136 Ind. App. 148, 189 N. E. 2d 720 (1964), (Transfer denied). Judge Cooper, speaking for this court, in that case, at page 152, stated:

"The writer of this opinion is inclined to agree with the thought expressed by Judge Gilkison that the consortium rights of one spouse should be co-extensive with the con-

sortium rights of the other. However, it appears that the majority members of the Supreme Court did not agree with this idea and supported the doctrine as announced in *Boden* v. *Del-Mar Garage, supra.* [205 Ind. 59, 185 N. E. 860 (1933)]. We are bound by the decisions of our Supreme Court, and the doctrine they announced in the *Boden* case, *supra,* is binding upon us until the same is changed, either by the Supreme Court or legislative enactment. See *In re Petitions to Transfer Appeals* (1930), 202 Ind. 365, 174 N. E. 812. At p. 376, *supra,* we find the following statement of the Supreme Court: 'The decisions of the Supreme Court are precedents binding upon the Appellate Court'."

In *Boden* v. *Del-Mar Garage,* 205 Ind. 59, 185 N. E. 860 (1933), our Supreme Court discussed at length the denial of a cause of action by the wife for the loss of consortium of her husband and concluded that such denial was not in violation of either State or Federal Constitutions.

In the more recent case of *McDaniel* v. *McDaniel,* 245 Ind. 551, at page 558, 201 N. E. 2d 215, at page 218 (1964), our Supreme Court reaffirmed this line of authority when it cited *Miller* v. *Sparks, supra,* favorably on the point in question:

"[A] wife is denied the right to bring a separate action for her husband's injuries resulting in his loss of earnings. It is therefore considered, in an action for personal injury (not resulting in death), that her damages for loss of earnings are merged with those of her husband. *Burk* v. *Anderson et al. etc.* (1953), 232 Ind. 77, 109 N. E. 2d 407; *Brown* v. *Kistleman* (1912), 177 Ind. 692, 98 N. E. 631; *Miller* v. *Sparks* (1963), 136 Ind. App. 148, 189 N. E. [2d] 720."

There is no way to misconstrue the direction of these precedents. The pattern is clear and as Judge Cooper noted earlier in *Miller,* we are bound until the Supreme Court or our General Assembly makes a change.

Decisions of our Supreme Court are binding on this court. *Stout* v. *Stout, Admr.,* 68 Ind. App. 278, 282, 114 N. E. 473 (1918), (Transfer denied). Appellant suggests that the recent case of *Harris* v. *Young Women's Christian Association,* 250 Ind. 491, 237 N. E. 2d 242 (1968), has

abrogated this well-recognized standard of appellate procedure. Our Supreme Court has yet to speak specifically and expressly on the issue except to reaffirm the existence of the standards set for this court to follow. As was recently stated by the United States Court of Appeals for the 7th Circuit in *Miskunas* v. *Union Carbide Corporation*, 399 F. 2d 847, at page 849 (7th Cir., 1968) :

> "[W]e would not be warranted in speculating that the Indiana Supreme Court will allow a recovery by a wife for loss of consortium resulting from a negligent injury to her husband, when again presented with that question."

This court may not make such a speculation either.

There is currently much discussion and concern about the status and power of the judicial branch of government. The appellant would have us side with those who espouse the philosophy that the court should abandon *stare decisis* and the rule of precedent when, in its opinion, there is a social or political need for change. While we agree that an appellate court must be conservatively responsive to accepted legal trends, we cannot agree that the courts should in any respect presume to be a barometer of public opinion or the weathervane of social change. Separation of powers is a well-founded governmental concept, and this court has always guarded such separation.

It is conceivable that the traditional concept of judicial review may evolve into something other than what it is today. It is obviously undergoing change. However, it is for the Legislature or the Supreme Court to establish the procedures for such change. We are here to interpret the law and to lay down guidelines by which the lawyers and the trial courts of this State can make determinations on which they can depend. It would be an ill-fated system of jurisprudence where the law was only as dependable as the most current advance sheet.

For the foregoing reasons, the judgment of the trial court must be affirmed.

Judgment affirmed. Costs taxed against appellant.

Pfaff, C.J., concurs; White, J., concurs in result with opinion; Sharp, J., dissents with opinion.

## CONCURRING OPINION

WHITE, J.—This is the type of case in which rhetoric flows easily. I shall attempt to add as few words as possible.

I agree with much that is said in both the majority opinion and in the dissent. In *Galbreath* v. *City of Indianapolis,* 145 Ind. App. 80, 248 N. E. 2d 553 (1969), I found myself in disagreement with a decision resting, in my view, almost wholly on *stare decisis.* There was in that case, however, good reason, I thought, to believe that the Indiana Supreme Court had destroyed the foundation on which the precedents there followed were constructed. Here, however, I agree with the majority that we should follow our own precedent so recently set in *Miller* v. *Sparks,* 136 Ind. App. 148, 189 N. E. 2d 720 (1964). While I do not consider the Supreme Court's denial of transfer nor even its citation of the decision in *McDaniel* v. *McDaniel*[1] as an adoption of the decision, it is certainly some indication that as late as 1964 our Supreme Court was not looking for a vehicle by which it could join the "trend" referred to in the dissent as a comment by Dean Prosser in his TORTS, 3d ed., p. 918.[2]

As an intermediate court we do not enjoy the same freedom to disregard what we may think to be outmoded or erroneous Supreme Court decisions which that body possesses or which we may rightfully exercise with respect to our own prior deci-

[1] 245 Ind. 551, 558, 201 N. E. 2d 215, 218 (1964). This was a divorce case in which the consortium cases were cited to underscore the wife's equitable interest in the *res* of a spendthrift trust growing out of the husband's duty to support the wife, which *McDaniel* stated was a reason for denying a wife "the right to bring a separate action for her husband's injuries resulting in his loss of earnings."

[2] See 245 Ind. at 357 where Judge Achor, in a dissenting opinion in *State ex rel. Harris* v. *Superior Court,* 245 Ind. 339, 197 N. E. 2d 634 (1964), discusses effect of denial of transfer.

sions.[3] The authority of *Burk* v. *Anderson*, 232 Ind. 77, 109 N. E. 2d 407 (1953), has not been eroded by the passage of time as had the precedents disregarded in *Brinkman* v. *City of Indianapolis*, 141 Ind. App. 662, 231 N. E. 2d 169 (1967). *Burk* presents us not with a problem of judicial consistency but with a question of judicial authority—the primacy of the Supreme Court. I would applaud that court's overruling *Burk* v. *Anderson*, but until it is so overruled, I must follow *Miller* v. *Sparks, supra,* in which we so recently reaffirmed the authity of *Burk* and of *Boden* v. *Del-Mar Garage*, 205 Ind. 59, 185 N. E. 860 (1933).

I, therefore, concur in the result reached by the majority.

## DISSENTING OPINION

SHARP, J.—This case involves the dynamic quality of the common law and the proper function of *stare decisis*.

It is necessary to consider the philosophical basis of *stare decisis* as a backdrop for the development of the law in regard to a wife's right to sue for loss of consortium due to the negligent injury of her husband.

The late Justice Musmanno stated:

"Failing to hold back both the overwhelming reasons of rudimentary justice for abolishing the doctrine, and the rising tide of out-of-state repudiation of the doctrine, the defendant hospital and the Hospital Association of Pennsylvania fell back for defense to the bastion of *stare decisis*. It is inevitable and proper that they should do so. Without *stare decisis,* there would be no stability in our system of jurisprudence.

"*Stare decisis* channels the law. It erects lighthouses and flys the signals of safety. The ships of jurisprudence must follow that well-defined channel which, over the years, has been proved to be secure and trustworthy. But it would not comport with wisdom to insist that, should shoals rise in a heretofore safe course and rocks emerge to encumber the

---

[3] The quotation in the majority opinion from Judge Cooper's opinion in *Miller* v. *Sparks, supra* [136 Ind. App. 148, 154, 189 N. E. 2d 720] states well the basic rule of the binding effect of Supreme Court decisions.

passage, the ship should nonetheless pursue the original course, merely because it presented no hazard in the past. *The principal of stare decisis does not demand that we follow precedent* which shipwreck justice.

"*Stare decisis* is not an iron mold into which every utterance by a court, regardless of circumstances, parties, economic barometer and sociological climate, must be poured, and where, like wet cement it must acquire an unyielding rigidity which nothing later can change." (emphasis added)

See *Flagiello* v. *Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193 (1965).

This precise statement was quoted with approval by Judge Lewis speaking for our Supreme Court in *Harris* v. *Young Women's Christian Association of Terre Haute,* 250 Ind. 491, 237 N. E. 2d 242 (1968), in which it overruled previous precedents regarding the doctrine of charitable immunity.

In *Brinkman* v. *City of Indianapolis,* 141 Ind. App. 662, 231 N. E. 2d 169 (1967), (rehearing and transfer denied), this court overruled previous precedents, including cases decided by our Supreme Court, in regard to the doctrine of municipal immunity. In doing so, Judge Smith, speaking for the court at 231 N. E. 2d page 173 stated:

"Judicial consistency under the doctrine of *stare decisis* loses its virtue when it conflicts with common sense and present social needs."

In *McLochlin* v. *Miller,* 139 Ind. App. 443, 446, 217 N. E. 2d 50 (1966), this Court stated:

"Decisions should be governed by precedent but if the reason for the precept has ceased the rule should be discontinued. *Rouse* v. *Paidrick* (1943), 221 Ind. 517, 526, 49 N. E. 2d 528; 7 Ind. L. Encyc., Courts, Sec. 61, p. 447, 448.

"The doctrine of stare decisis et non quieta movere, 'to stand by the decisions and not to disturb settled points,' has been accused of causing the legal profession to look backward instead of encouraging prospective vision. Because as it has been said, good law is stable but does not stand still; *it is always incumbent on a court when the question is prop-*

*erly raised, to investigate the wisdom of precedents etstab-
lished many years ago."* (emphasis added)

We must therefore examine the development of the law with
reference to the wife's right to sue for loss of consortium in
Indiana and in other jurisdictions to determine whether there
is any sound basis for following the earlier precedents.

Unquestionably at common law the wife was prohibited
from suing for loss of consortium resulting from the negligent
injury of her husband. In Indiana this position was stated in
*Boden* v. *Del-Mar Garage, Inc.*, 205 Ind. 59, 185 N. E. 860
(1933).

The last statement of our Supreme Court on this subject is
in *Burk* v. *Anderson et al.*, 232 Ind. 77, 80, 109 N. E. 2d 407,
408 (1952), in which Judge Gilkinson stated:

> "Our court is agreed that when a wife is tortiously in-
> jured by another either negligently or designedly, the hus-
> band has an independent right of action against the tort-
> feasor, for his loss of services, society, companionship and
> all that is contained in the word 'consortium' of the wife,
> resulting from such injury. *It is the belief of the writer of
> this opinion that when a husband is tortiously injured by
> another either negligently or designedly the wife, under our
> enabling statutes, has an independent right of action against
> the tortfeasor, for her loss of support, society and mainte-
> nance of the husband, resulting from such injuries. It is
> my thought that the consortium rights of one spouse are co-
> extensive with the consoritum rights of the other.* Notwith-
> standing the weight of authority to the contrary, I think
> this should be the law. *Radke* v. *Schlundt* (1902), 30 Ind.
> App. 213, 65 N. E. 770, *Hipp* v. *E. I. Dupont de Nemours &
> Co.*, 182 N. C. 9, 108 S. E. 318. However, a majority does
> not agree with this idea.
>
> "In the case at bar it will be noted that the same wrong-
> ful act which caused the alleged loss of support, society and
> maintenance of the husband, caused his immediate death.
> So far as we can find where a right of action is given to
> collect for the loss of services, support, maintenance, so-
> ciety, companionship, association, etc. usually considered
> as contained in the word consortium, the period during
> which recovery may be had for such loss is limited to the
> time between the date of the commission of the injury and

the date of the death of the injured spouse." (my emphasis)

I would emphasize the comment by Judge Gilkinson, made as it was in 1952, as being prophetic of the subsequent development of the law. There can be no doubt that in his mind a rational basis for the old common law rule no longer existed.

The last word from this court in *Miller* v. *Sparks*, 136 Ind. App. 148, 189 N. E. 2d 720 (1963). Again the writer agreed with Judge Gilkinson in *Burk* v. *Anderson* but felt bound by *Boden* v. *Del-Mar Garage, Inc., supra*.

We must examine our Indiana precedents against both experience and logic.

A consideration of the development of the law generally in the area of consortium is important to determine the validity of our precedents. Prior to 1950 the cases uniformly prohibited a wife from suing for the loss of consortium for injuries to her husband occasioned by the negligence of another. See cases collected in 23 A. L. R. 2d 1366, *et seq.*

In 1950 the Court of Appeals for the District of Columbia decided the landmark case of *Hitaffer* v. *Argonne Co.*, 87 U. S. D. C. 57, 183 F. 2d 811, cert. den., 340 U. S. 852, 71 S. Ct. 80, 95 L. Ed. 624, which is the subject of an annotation at 23 A. L. R. 2d 1366. In rejecting prior precedents the court stated:

"Furthermore, we can conceive of no reasons for denying the wife this right for the reason that in this enlightened day and age they simply do not exist. On the contrary it appears to us that logic, reason and right are in favor of the position we are now taking. The medieval concepts of the marriage relation to which other jurisdictions have reverted in order to reach the results which have been handed to us as evidence of the law have long since ceased to have any meaning. It can hardly be said a wife has less of an interest in the marriage relation than does the husband or in these modern times that a husband renders services of such a different character to the family and household that they must be measured by a standard of such uncertainty that the law cannot estimate any loss thereof.

The husband owes the same degree of love, affection, felicity, etc., to the wife as she to him. He also owes the material service of support, but above and beyond that he renders other services as his mate's helper in her duties, as advisor and counselor, etc. Under such circumstances it would be a judicial fiat for us to say that a wife may not have an action for loss of consortium due to negligence.

"It is therefore the opinion of this court that in light of the existing law of this jurisdiction, in light of the specious and fallacious reasoning of those cases from other jurisdictions which have decided the question and in light of the demonstratable desirability of the rule under the circumstances, a wife has a cause of action for loss of consortium due to a negligent injury to her husband."

The *Hitaffer* case has now been followed in many jurisdictions. See *Missouri Pac. Transp. Co.* v. *Miller,* 227 Ark. 351, 299 S. W. 2d 41 (1957) ; *Brown* v. *Georgia-Tennessee Coaches,* 88 Ga. App. 519, 77 S. E. 2d 24 (1st Div., 1953) ; *Bailey* v. *Wilson,* 100 Ga. App. 405, 111 S. E. 2d 106 (2d Div., 1959) ; *Acuff* v. *Schmit,* 248 Iowa 272, 78 N. W. 2d 480 (1957) ; *Stenta* v. *Leblang,* 5 Storey 181, 55 Del. 181, 185 A. 2d 759 (1962) ; *Nichols* v. *Sonneman,* 91 Idaho 199, 418 P. 2d 562 (1966) ; *Dini* v. *Naiditch,* 20 Ill. 2d 406, 170 N. E. 2d 881, 86 A. L. R. 2d 1184 (1960) ; *Deems* v. *Western Md. Ry. Co.,* 247 Md. 95, 231 A. 2d 514 (1967) ; *Montgomery* v. *Stephan,* 359 Mich. 33, 101 N. W. 2d 227 (1960) ; *Novak* v. *Kansas City Tr.,* 365 S. W. 2d 539 (Mo. 1963) ; *Ekalo* v. *Constructive Serv. Corp. of America,* 46 N. J. 82, 215 A. 2d 1 (1965) ; *Clem* v. *Brown,* 3 Ohio Misc. 167, 207 N. E. 2d 398, 32 Ohio Op. 2d 477 (1965) ; *Ross* v. *Cuthbert,* 239 Or. 429, 397 P. 2d 529 (1964) ; *Hoekstra* v. *Helgeland,* 78 S. D. 82, 98 N. W. 2d 669 (1959) ; *Moran* v. *Quality Aluminum Casting Co.,* 34 Wis. 2d 542, 150 N. W. 2d 137 (1967). There are also Federal cases from Montana and Nebraska which have adopted the *Hitaffer* doctrine. See *Duffy* v. *Lipsman-Fulkerson & Co.,* 200 F. Supp. 71 (D. Mont. 1961) ; *Dutton* v. *Hightower & Lubrecht Constr. Co.,* 214 F. Supp. 298 (D. Mont., 1963) ; *Cooney* v. *Moomaw,* 109

F. Supp. 448 (D. Neb., 1953), and *Luther* v. *Maple,* 250 F. 2d 916, 922 (8 Cir., 1958) (Nebraska law).

The following jurisdictions have considered the question and refused to set aside the old precedents: *Smith* v. *United Constr. Workers,* 271 Ala. 42, 122 So. 2d 153 (1960); *Deshotel* v. *Atchison, T. & S. F. Ry. Co.,* 50 Cal. 2d 664, 328 P. 2d 449 (1958); *Hoffman* v. *Dautel,* 192 Kan. 406, 388 P. 2d 615 (1964); *Baird* v. *Cincinnati, New Orleans and Texas Pacific R. Co.,* 368 S. W. 2d 172 (Ky., 1963); *Potter* v. *Schafter,* 161 Me. 340, 211 A. 2d 891 (1965); *Snodgrass* v. *Cherry-Burrell Corp.,* 103 N. H. 56, 164 A. 2d 579 (1960); *Roseberry* v. *Starkovich,* 73 N. M. 211, 387 P. 2d 321 (1963); *Neuberg* v. *Bobowicz,* 401 Pa. 146, 162 A. 2d 662 (1960); *Page* v. *Winter,* 240 S. C. 516, 126 S. E. 2d 570 (1962); *Krohn* v. *Richardson-Merrell,* 219 Tenn. 37, 406 S. W. 2d 166 (1966); *Seagraves* v. *Legg,* 147 W. Va. 331, 127 S. E. 2d 605 (1962); *Baldwin* v. *State,* 125 Vt. 317, 215 A. 2d 492 (1965); *Rush* v. *Great Amer. Ins. Co.,* 213 Tenn. 506, 376 S. W. 2d 454 (1964). The principles stated in the *Hitaffer* case are also supported by numerous legal writers. See Prosser, *Torts,* 916-919 (3d ed. 1964); Holbrook, *The Change in the Meaning of Consortium,* 22 Mich. L. Rev. 1 (1923); Lippman, *The Breakdown of Consortium,* 30 Colum. L. Rev. 651, 664-68 (1930); Simone, *The Wife's Action for Loss of Consortium-Progress or No?,* 4 St. Louis U. L. J. 424 (1957); Kinaird, *Right of Wife to Sue for Loss of Consortium Due to Negligent Injury to Her Husband,* 35 Ky. L. J. 220, 223 (1946); Foster, *Relational Interests of the Family,* 1962 U. Ill. L. F. 493, 525-27 (1962); Note, *Judicial Treatment of Negligent Invasion of Consortium,* 61 Colum. L. Rev. 1341, 1352-57 (1961); Friedman, *Consortium as an "Interest" in the Law of Torts,* 32 Can. B. Rev. 1065 (1954); Brett, *Consortium and Servitium, A History and Some Proposals* (Pts. 1-3), 29 Austl. L. J. 321, 389, 428 (1965); 64 Harv. L. Rev. 672 (1951); 39 Cornell L. Q. 761 (1954); 39 Mich. L. Rev. 820 (1941); 55 Mich. L.

Rev. 721 (1957) ; 1 U.C.L.A. L. Rev. 223 (1954) ; 20 Fordham L. Rev. 342 (1951) ; 41 Geo. L. J. 443 (1953) ; 86 A. L. R. 2d 1184 (1960) ; 23 A. L. R. 2d 1366 (1950), and Restatement of Torts, Section 693 (1938).

It is impossible here to examine in detail all the cases from other jurisdictions that have rejected prior precedents in this regard. However, the reasoning and result in at least three are helpful.

In 1960 the Supreme Court of Illinois expressly reversed prior precedents in *Dini* v. *Naiditch*, 20 Ill. 2d 406, 170 N. E. 2d 881 (1960). At page 892 the court stated:

"Other courts concede either expressly or impliedly the inadequacy of the common law rule denying the wife an action for loss of consortium for the negligent injury of her husband, but insist that the remedy lies with the legislature. *Deshotel* v. *Atchison, Topeka & Santa Fe R. Co.*, 328 P. 2d at page 452; *Ripley* v. *Ewell*, 61 So. 2d 420; *Ash* v. *S. S. Mullen, Inc.*, 261 P. 2d 118; *Garrett* v. *Reno Oil Co.*, 271 S. W. 2d 764. We disagree. Inasmuch as the obstacles to the wife's action were 'judge invented,' there is no conceivable reason why they cannot be 'judge destroyed.' *Montgomery* v. *Stephan*, 101 N. W. 2d at page 233. We find no wisdom in abdicating to the legislature our essential function of re-evaluating common law concepts in the light of present day realities. Nor do we find judicial sagacity in continually looking backward and parroting the words and analyses of other courts so as to embalm for posterity the legal concepts of the past. On the contrary, we are mindful of the caveat of the Georgia court in *Brown* v. *Georgia-Tennessee Coaches, Inc.*, 88 Ga. App. 519, 77 S. E. 2d 24, 32, in adjudicating this precise issue: '* * * we do indeed have a 'charge to keep,' but that charge is not to perpetuate error or to allow our reasoning or conscience to decay or turn deaf ears to new light and new life.

"Consequently, we must agree with those jurists and critics who find that the reasons advanced in the cases for denying the wife's right of action for loss of consortium are without substance, and apparently have been added to support a predetermined conclusion dictated by history and the fear of extending liability. Prosser, *Torts*, 948; 36 Cornell L. Q. 148; 64 Harv. L. Rev. 672; 23 A. L. R. 2d 1391; *Hitaffer* v. *Argonne Co.*, 1950, 87 U. S. App. D. C., 57, 183

F. 2d 811; *Acuff* v. *Schmit,* 1956, 248 Iowa 272, 78 N. W. 2d 480; *Montgomery* v. *Stephan,* 1960, 359 Mich. 33, 101 N. W. 2d 227; *Missouri Pacific Transportation Co.* v. *Miller,* 1957, 227 Ark. 351, 299 S. W. 2d 41. Obviously the historical milieu in which the rule originated has been completely changed. Today a wife is no longer her huband's chattel, but stands as his equal in the eyes of the law. *Acuff* v. *Schmit,* 78 N. W. 2d at page 485; *Brandt* v. *Keller,* 413 Ill. 503, 109 N. E. 2d 729. Therefore, precedents predicated on a medieval society are out of harmony with the conditions of modern society, and cannot in good conscience be deemed determinative. As Justice Cardozo aptly stated: 'Social, political and legal reforms have changed the relations between the sexes and put woman and man upon a plane of equality. Decisions founded upon the assumption of a by-gone inequality are unrelated to present-day realities, and ought not to be permitted to prescribe a rule of life.' Cardozo, *The Growth of the Law,* pp. 105, 106.

"Inasmuch as we prefer cogent reasoning to numerical superiority of the authorities, we must follow those courts which hold that since the husband's right to the conjugal society of his wife is no greater than hers, an invasion of the wife's conjugal interest merits the same protection of the law as an invasion of the husband's conjugal interest. Furthermore, if the law protects the wife's conjugal interest from so-called intentional invasions, as in the alienation-of-affections cases, it cannot deny protection to the same interest where it has been injured by a negligent invasion. The same basic reason for granting relief exists in both cases, namely, the protection of the family, as the unit upon which our society is founded."

Also, in 1960 the Supreme Court of Michigan in *Montgomery* v. *Stephan,* 359 Mich. 33, 101 N. W. 2d 227 (1960), speaking of prior precedent, the court stated at page 228 of 101 N. W. 2d:

". . . Thus again we reach the conflict that divides us, for the law as Dean Pound put it, must be stable, and yet it cannot stand still. Were we to rule upon precedent alone, were stability the only reason for our being, we would have no trouble with this case. We would simply tell the woman to begone, and to take her shattered husband with her, that we need no longer be affronted by a sight so repulsive. In so doing we would have vast support from the dusty books. But the dust of the decision would remain in our mouths

through the years ahead, a reproach to law and conscience alike. Our oath is to do justice, not to perpetuate error.

"Is the holding that recovery be denied, in truth the demand of the common law? If so, and the vast amount of authority so saying bears witness thereof, must, one day, have been reasons for the rule, for as Holmes tells us, the common law has grown by an historical process."

The reference to Holmes, *The Common Law*, (1881), at page 5 is revealing, the full quote states:

"The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the customs, belief, or necessity disappear, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and centers on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received."

The Michigan Supreme Court concluded at page 234 of 101 N. W. 2d:

"The law moves in halting steps and not equally on all fronts. It proceeds from the simpler cases, such as the intentional infringements, to those more difficult. So it has done with respect to the interest known as consortium. The husband's action, in the earliest cases, was permitted for loss of consortium due to an intentional injury. This was the first stage of recovery. At a later date the action was extended to the second stage recovery for an injury negligently inflicted. Generally speaking, the rights of the wife, as respects her cause of action for loss of her husband's consortium, are still in what we referred to above as the 'first stage of recovery.' She can today perhaps recover for loss of consortium where the defendant acted maliciously or intentionally, but she still may not recover where the injury was merely negligently inflicted. Possibly it will take the majority of our courts, also, as it did the English courts, scores of decades to move into the second stage of recovery, though it is to be hoped that justice will not be so long deferred.

"Relief is extended the wife in the intentional cases, *supra,* for one basic reason, the interest of society in the protection of the family as the social unit upon which, at least in this country, society rests. Our concern is not with the family of the middle ages, with its tyrannies and abuses, but with the family of today. If this is the interest to be protected, and we conclude that it is, the law's protection should extend as well to the negligent as to the intentional injury. In each case the loss is equally severe and the importance of our society of the welfare of the family unit outweighs the importance of the defendant's claims to immunity.

"The gist of the matter is that in today's society the wife's position is analogous to that of a partner, neither kitchen slattern nor upstairs maid. Her duties and responsibilities in respect to the family unit complement those of the husband, extending only to another sphere. In the good times she lights the hearth with her own inimitable glow. But when tragedy strikes it is a part of her unique glory that, forsaking the shelter, the comfort, the warmth of the home, she puts her arm and shoulder to the plow. We are not at the heart of the issue. In such circumstances, when her husband's love is denied her, his strength sapped, and his protection destroyed, in short, when she has been forced by the defendant to exchange a heart for a husk, we are urged to rule that she has suffered no loss compensable at the law. But let some scoundrel dent a dishpan in the family kitchen and the law, in all its majesty, will convene the court, will march with measured tread to the halls of justice, and will there suffer a jury of her peers to assess the damages. Why are we asked, then, in the case before us, to look the other way? Is that what is meant when it is said that justice is blind?

"Now, we see the suffering. But it is urged that the precedents tie us. A wife, said the ancient precedents, could not sue because she was a legal nonentity. And even if she could, she had no cause of action to assert because a servant has no 'right' to the services of her master. But none of this is true today, either as a matter of fact or as a matter of law. The Married Women's Acts and common constitutional provisions have wrought a revolutionary change. Legally, today the wife stands on a par with her husband. Factually, as we well know, her position is not less than that of an equal partner. The precedents of the older cases are not valid precedents. They are violative of women's statutory rights and constitutional safeguards. They are out of

harmony with the conditions of modern society. They do violence to our convictions and our principles. We reject their applicability. The reasons for the old rule no longer obtaining, the rule falls with it. The obstacles to the wife's action were judge-invented and they are herewith judge-destroyed. We conclude that the wife before us has pleaded a cause of action."

The last word on this subject is from the Court of Appeals of New York last year in *Millington* v. *Southeastern Elevator Co.* (N. Y.), 239 N. E. 2d 897, 899 (1968). In that case the highest court of the state of New York rejected a line of precedents, the most recent of which it had decided in *1958*. Judge Keating, spoke for the court:

> "The concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more. (*Montgomery* v. *Stephan*, 359 Mich. 33, 36, 101 N. W. 2d 227; *Moran* v. *Quality Aluminum Casting Co.*, *supra*, 34 Wis. 2d p. 557, 150 N. W. 2d 137.) Consequently the interest sought to be protected is personal to the wife. It is the interest which may have turned a happily married woman into a life-long nurse and deprived her of the opportunity of rearing children. Disparagingly described as 'sentimental' or 'parasitic' damages, the mental and emotional anguish caused by seeing a healthy, loving companionable mate turned into a shell of a person is real enough. To describe the loss as 'indirect' is only to evade the issue. The loss of companionship, emotional support, love, felicity and sexual relations are real injuries. The trauma of having to care for a permanent invalid is known to have caused mental illness. There may not be a deterioration in the marital relationship, but it will certainly alter it in a tragic way. Even in the case of a husband the 'sentimental' damages may predominate over the loss of support or material element. Thus to describe these damages as merely parasitic is inaccurate and cruel."

The opinion also points out that since 1950 at least 15 states have considered and clearly rejected prior precedents based on the old common law prohibition and that 13 states have refused to do so. However, the majority of those states re-

fusing to follow the *Hitaffer* case have done so on the basis it was a legislative matter and not because of any intrinsic merit of the old precedents. The court also refers to Dean Prosser's comment that since 1958 there was a definite trend in favor of approving the *Hitaffer* case. See Prosser, *Torts*, 3d ed., p. 918.

I believe the following statement by Judge Cardozo in *The Nature of the Judicial Process,* at page 163, helps put this case in proper perspective:

"In what I have said, I have thrown, perhaps too much, into the background and the shadow the cases where the controversy turns not upon the rule of law, but upon its application to the facts. Those cases, after all, make up the bulk of the business of the courts. They are important for the litigants concerned in them. They call for intelligence and patience and reasonable discernment on the part of the judges who must decide them. But they leave jurisprudence where it stood before. As applied to such cases, the judicial process, as was said at the outset of these lectures, is a process of search and comparison, and little else. We have to distinguish between the precedents which are merely static, and those which are dynamic. Because the former outnumber the later many times, a sketch of the judicial process which concerns itself almost exclusively with the creative or dynamic element, is likely to give a false impression, an overcolored picture, of uncertainty in the law and of free discretion in the judge. Of the cases that come before the court in which I sit, a majority, I think, could not, with semblance of reason, be decided in any way but one. The law and its application alike are plain. Such cases are predestined, so to speak, to affirmance without opinion. In another and considerable percentage, the rule of law is certain, and the application alone doubtful. A complicated record must be dissected, the narratives of witnesses, more or less incoherent and unintelligible, must be analyzed, to determine whether a given situation comes within one district or another upon the chart of rights and wrongs. The traveler who knows that a railroad crosses his path must look for approaching trains. That is at least the general rule. In numberless litigations the description of the landscape must be studied to see whether vision has been obstructed, whether something has been done or omitted to put the traveler off his

guard. Often these cases and others like them provoke difference of opinion among judges. Jurisprudence remains untouched, however, regardless of the outcome. *Finally there remains a percentage, not large indeed, and yet not so small as to be negligible, where a decision one way or the other, will count for the future, will advance or retard, sometimes much, sometimes little, the development of the law. These are the cases where the creative element in the judicial process finds its opportunity and power. It is with these cases that I have chiefly concerned myself in all that I have said to you. In a sense it is true of many of them that they might be decided either way. By that I mean that reasons plausible and fairly persuasive might be found for one conclusion as for another. Here come into play that balancing of judgment, that testing and sorting of considerations of analogy and logic and utility and fairness, which I have been trying to describe. Here it is that the judge assumes the function of a lawgiver."* (emphasis added)

This case is distinctly the latter type case referred to by Cardozo which involves the creative element of the judicial process.

In the proper performance of its judicial function this court is constantly engaged in examining and modifying prior precedents. Although we use a logical format for this function the changes in the law which result are more generally based on experience than strict logic. When examined in the light of modern reality the underlying basis of the prior precedents of this court and our Supreme Court in regard to a wife's loss of consortium no longer exists. Therefore, the reason for these precedents no longer exists. I do not consider this to be destruction of *stare decisis* but a fulfillment of its proper function.

Neither do I believe we are impelled to wait for a legislative change. The legislature did not close the court house door to the wife for her loss of consortium and I do not believe we are required to wait for the legislature to open it. Furthermore, I agree with the comment in *Harris* v. *Y.M.C.A., supra,* that the legislature has other things to do besides raking through the State Reports to discover which should be incinerated.

I think the time has come to adopt the principles announced in the line of cases from *Hitaffer* to *Millington* as a part of the fabric of the common law in Indiana.

I would, therefore, reverse the trial court in its sustaining of Appellee's demurrer.

NOTE.—Reported in 249 N. E. 2d 512.