## TROUE *v.* MARKER.

[No. 1269S288. Filed December 9, 1969.]

*Jack R. Notestine,* Fort Wayne, and *Peters & Peebles,* of counsel, Fort Wayne, for appellant.

*Robert Robinson, Robert Hollowell,* Indianapolis, and *Hollowell, Robinson, Spencer & Linder,* of counsel, Indianapolis, *Bloom & Bloom,* of counsel, Columbia City, for appellee.

ARTERBURN, J.—This case comes before us for consideration on petition to transfer. See opinion of Appellate Court reported in 249 N.E. 2d 512.

The issue presented on this appeal is whether or not the prevailing doctrine in Indiana of denying a wife a recognized cause of action for loss of consortium of her husband should be abrogated and the principle relating thereto should be changed so as to grant a wife such cause of action as a husband has for such loss.

The appellee contends that there is no ground for transfer under Rule 2-23 of this Court, which provides that transfer may be granted on the following ground:

"(4) That the opinion of the Appellate Court:
　(a) contravenes a ruling precedent of the Supreme Court, indicating the ruling precedent;
　(b) or that the opinion of the Appellate Court erroneously decides a new question of law, concisely stating the same;
　(c) or that the Appellate Court failed to give a statement in writing of each substantial question arising on the record and the decision of the Court thereon. If this cause is relied on, the petition shall set out or exhibit so much of the record, assignment of errors,

> briefs and opinion as will affirmatively disclose such failure and establish that the petitioner was prejudiced thereby."

It is to be noted that none of the items set forth above cover a situation where a transfer is sought to the Supreme Court from the Appellate Court in an attempt to change a ruling precedent of this Court, such as in the situation before us.

Burns' Ind. Stat. Anno. § 4-215 includes only the first two items as grounds for transfer above: (a) and (b). Subsequently thereto this Court by rule added (c). The addition of that subsection of the rule has an interesting history which is applicable to the situation here. Before this amendment was made to the rule, a party sought to transfer a case from the Appellate Court on the ground that the Appellate Court had failed and refused to consider and write upon certain substantial questions raised in the record and properly before the Appellate Court. In *Warren* v. *Indiana Telephone Co.* (1939), 217 Ind. 93, 26 N. E. 2d 399, we held that regardless of the fact that the statute did not provide for a transfer in such a case, this Court would nevertheless accept the case on transfer and consider the case upon appeal. In reaching that conclusion this Court made an extensive comment upon its powers. It was reasoned that the Appellate Court was primarily a court of appeals, a creature of the legislature, while the Supreme Court was a court of final appeals constitutionally created, and that although the legislature created the Appellate Court and gave it certain powers of appeal, it could not deprive the Supreme Court of its inherent right to review the actions of any lower or intermediate court by limiting the grounds for a petition to transfer. We stated that it was the intent of the framers of the Constitution that the laws of this state should be general and uniform and it is necessary that all courts take their controlling principles of law from one common source, and that source must be the Supreme Court of this state. That opinion further stated that if the legislature had not provided for a petition to transfer to this Court

for review of cases in the Appellate Court, this Court at common law could exercise a procedure by writ of certiorari for such review. A litigant should not be left without the remedy of review before the Supreme Court because of a defect in the statute. Under such circumstances it would become the duty of this Court to supply the procedure. We additionally said:

"The clerk of this court is, ex officio, clerk of the Appellate Court. § 4-228, Burns' 1933, § 1375, Baldwin's 1934. As such he has custody of the records in cases disposed of by the Appellate Court. It is not the policy of the law to require unnecessary things to be done, and no writ of certiorari or other formal proceedings are required to enable this court to gain access to such records. When a proper showing is made in and as a part of the petition to transfer that the Appellate Court has failed to consider and pass upon a substantial question duly presented to it, this court will examine the record, papers, and briefs in the same manner and to the same extent as if these had been brought up by a writ of error. The particularity with which such a showing should be made was suggested in the case of *State ex rel. Daily* v. *Kime, supra*. By this means the right of litigants to have their appeals fully and finally considered by the court of last resort will be amply protected.

"It follows from what has been said that this appellant may not be denied his right to present his case to this court for review because the Legislature has not provided a means for bringing it here. But since the statutory procedure for transferring cases from that court to this was intended as a substitute for the writ of error in cases to which it was made applicable, there is no reason why this court cannot adopt and utilize that procedure in the case at bar. It would be less confusing to the courts and lawyers to permit this to be done than to undertake to establish a special procedure for such situations by rule of court. The name given to a proceeding for review is not controlling nor important; the substance of the right is the vital thing. To call a writ of error an appeal, or an application for certiorari a petition to transfer does no violence to substantive rights. The appellant's petition to transfer, treated as performing the functions of a petition for a writ of error, is sufficient to present the case to us. It has been so considered and we have examined the record."

See also: *Curless* v. *Watson* (1913), 180 Ind. 86, 102 N. E. 497 to the same effect.

The reasoning of the foregoing cases is compelling and in our opinion cannot be refuted. The statutory apparatus known as the petition to transfer from the Appellate Court to the Supreme Court in reality operates a writ of certiorari for review of the action of a lower court.

We hold, therefore, that where the statute or rules of this Court fail to provide for a review of the decision of the Appellate Court, which decision could be reviewed under the old common law writ of certiorari, the Supreme Court of this state may consider a petition to transfer as a writ of certiorari at common law. In such a case this Court need not be limited to the items or grounds specified in the rule or in the statute. The action of this Court is based upon its inherent constitutional duty to act as the final and ultimate authority in stating what the law in this state is.

We, therefore, grant the petition to transfer and will consider it in substance as one here on writ of certiorari for review. We point out that to come to any other conclusion would result in the inability of this Court, the highest court in the state, to change any ruling precedent, however erroneous, once the appeal was terminated in the Appellate Court, for there would be no basis upon which we could review, reevaluate and update our own pronouncements. This would result in the anomalous situation of the Appellate Court being the only court that could overturn our precedents.

We now proceed to consider the question on the merits as to whether or not a wife may recover for loss of consortium of her husband in this state. The complaint in this case alleged in substance that the husband was severely injured in an automobile accident by reason of the alleged negligence of the defendant-appellee Marker; that as a result of the accident, appellant's husband was hospitalized for 159 days during which time he underwent surgery 7 times; that after being

released, he returned to the hospital 4 more times for corrective surgery necessitated by his injuries; that as a result the plaintiff was compelled to find employment, taking her away from her two children and preventing her from maintaining and looking after the home for her family; that she underwent mental anguish as a result of the changed situation following the injury of her husband, which impaired her health; that she lost his protection, consideration and companionship and his help and services about the home, including escorting her and driving her to places which required her attendance. There was an allegation of monetary damages. To this paragraph of complaint the trial court sustained a demurrer. The appellant refused to plead further and judgment was entered against the appellant. This action was affirmed by the Appellate Court. The trial court and the Appellate Court apparently followed certain precedent in this state arriving at their decision. For such action we can only commend the lower courts. Yet we, as members of the highest court of this state, at infrequent intervals have occasion to reconsider some doctrines and trends of the common law of this state which, due to the passage of time and social changes, are subject to attack as being outmoded.

In this case we are dealing with a principle or doctrine of law that has its origin in an archaic time, when a wife was more a servant than a companion and partner. This principle of law, which denied the wife the right to sue, had its origin in what is known as coverture of a married woman, which limited her legal capacity to sue or assert her rights as an individual. As Blackstone at that time said:

"But though our law in general considers man and wife as one person, yet there are some instances in which she is separately considered; as inferior to him and acting by his compulsion . . .

"The husband also, by the old law, might give his wife moderate correction. For, as he is to answer for her misbehavior, the law thought it reasonable to entrust him with this power of restraining her, by domestic chastisement in

the same moderation that a man is allowed to correct his apprentice or children; for whom the paster or parent is also liable in some cases to answer.

\* \* \* \* \*

"These are the chief legal effects of marriage during the coverture; upon which we may observe, that even the disabilities which the wife lies under are for the most part intended for her protection and benefit; so great a favorite is the female sex of the laws of England."

Chase's Blackstone's Commentaries (3rd Ed.), pp. 158-159.

Of course, the law and times of which Blackstone spoke have changed. That was before the days when women were given the right to vote, to make contracts and own their separate property, and before the legislation generally known as the Married Womens' Act (Burns' §§ 38-101—38-126). Since that time the unity concept of marriage has in a large part given way to the partner concept whereby a married woman stands as an equal to her husband in the eyes of the law. There is, therefore, reason in some instances to say that the doctrine of stare decisis is not an iron mold which can never be changed. Holmes, in his The Common Law (1881), p. 5 recognizes this.

"The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the customs, belief, or necessity disappear, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and centers on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received."

The common law must keep pace with changes in our society, and in our opinion the change in the legal and social status of women in our society forces us to recognize a change in the doctrine with which we are concerned in this opinion.

The precedent for the appellee's position in this state is based on *Boden* v. *Del-Mar Garage* (1933), 205 Ind. 59, 185 N. E. 860 and *Burk* v. *Anderson* (1952), 232 Ind. 77, 109 N. E. 2d 407. These cases represent the prevailing law in this state and grant to a husband a cause of action for loss of consortium resulting from a wrongful injury to his wife, yet the wife is denied recovery for loss of consortium of her husband. These cases and those from other states based on the same doctrine attempt to reason that a valid distinction exists between the right of a husband to recover for loss of consortium and the right of a wife to recover for the same type of loss. It is argued that the wife's recovery is purely intangible, such as for mental anguish and emotional upset, while the husband's loss is tangible and pecuniary also and that a party may not recover for purely intangible mental and emotional suffering. Here we have the type of reasoning and attempted analysis, such as Holmes points out above, resorted to when an ancient doctrine has lost its underpinning by social changes. The courts frequently attempt to shore up the doctrine by offering reasons for its existence inconsistent with its origin. The reasoning here appears to us to be obviously specious. In this state the law formerly permitted a wife to recover damages for alienation of the affections of her husband. Here again the argument was made that this was a direct loss to her, while the loss of consortium was not a direct loss to the wife. We are unable to follow such reasoning. The loss in both situations appears to us to be alike, and one is no more indirect than the other. In our opinion, consortium does not consist alone of intangible mental and emotional elements, but embraces within its ambit also services and charges which one partner in the marriage performs for the other and have a monetary and pecuniary value. We take one instance to point this out. The allegation in the complaint specifies that the husband took his wife to places she desired to go. It takes no unusual asumption to conclude that if he was unable to take her, she would have to hire transportation or use her

own means of conveyance at her own expense. This is a monetary loss. The landmark decision on the doctrine here under consideration was made in 1950 in *Hitaffer* v. *Argonne Co.* (1950), 87 U. S. App. D. C. 57, 183 F. 2d 811, cert. den. 340 U. S. 852, 71 S. Ct. 80, 95 L. Ed. 624. In rejecting precedents from virtually every jurisdiction that had considered the question, the court held:

> "Furthermore, we can conceive of no reasons for denying the wife this right for the reason that in this enlightened day and age they simply do not exist. On the contrary it appears to us that logic, reason and right are in favor of the position we are now taking. The medieval concepts of the marriage relation to which other jurisdictions have reverted in order to reach the results which have been handed to us as evidence of the law have long since ceased to have any meaning. It can hardly be said that a wife has less of an interest in the marriage relation than does the husband or in these modern times that a husband renders services of such a different character to the family and household that they must be measured by a standard of such uncertainty that the law cannot estimate any loss thereof. The husband owes the same degree of love, affection, felicity, etc., to the wife as she to him. He also owes the material service of support, but above and beyond that he renders other services as his mate's helper in her duties, as advisor and counselor, etc. Under such circumstances it would be a judicial fiat for us to say that a wife may not have an action for loss of consortium due to negligence.
>
> "It is therefore the opinion of this court that in light of the existing law of this jurisdiction, in light of the specious and fallacious reasoning of those cases from other jurisdictions which have decided the question and in light of the demonstrable desirability of the rule under the circumstances, a wife has a cause of action for loss of consortium due to a negligent injury to her husband."

It is noted in Prosser on Torts (3rd Ed.) p. 918 that the trend is in favor of approval of *Hitaffer* v. *Argonne Co., supra.* This conclusion is buttressed by the following decisions which have followed the lead of *Hitaffer*:

*Missouri Pac. Transp. Co.* v. *Miller* (1957), 227 Ark. 351, 299 S. W. 2d 41; *Yonner* v. *Adams* (1961), 53 Del. 229, 167

A. 2d 717; *Bailey* v. *Wilson* (1959, 2d Div.), 100 Ga. App. 405, 111 S. E. 2d 106; *Nichols* v. *Sonneman* (1966), 91 Idaho 199, 418 P. 2d 562; *Dini* v. *Naiditch* (1960), 20 Ill. 2d 406, 170 N. E. 2d 881; *Acuff* v. *Schmit* (1956), 248 Iowa 272, 78 N. W. 2d 480; *Deems* v. *Western Md. Ry. Co.* (1967), 247 Md. 95, 231 A. 2d 514; *Montgomery* v. *Stephan* (1960), 359 Mich. 33, 101 N. W. 2d 227; *Thill* v. *Modern Erecting Co.* (Minn., 1969), 170 N. W. 2d 865; *Shepherd* v. *Consumers Co-op Ass'n.* (Mo. 1964), 384 S. W. 2d 635; *Ekalo* v. *Constructive Serv. Corp. of America* (1965), 46 N. J. 82, 215 A. 2d 1; *Millington* v. *Southeastern Elevator Co.* (1968), 22 N. Y. 2d 498, 293 N. Y. S. 2d 305, 239 N. E. 2d 897; *Clem* v. *Brown* (1965), 3 Ohio Misc. 167, 207 N. E. 2d 398, 32 Ohio Op. 2d 477; *Ross* v. *Cuthbert* (1964), 239 Ore. 429, 397 P. 2d 529; *Hayes* v. *Swenson* (1958), 14 Pa. D. & C. 2d 708; *Hoekstra* v. *Helgeland* (1959), 78 S. D. 82, 98 N. W. 2d 669; *Moran* v. *Quality Aluminum Casting Co.* (1967), 34 Wisc. 2d 542, 150 N. W. 2d 137.

We find that there is no valid or consistent reason offered in the precedents urged by the appellee for a continuation of the doctrine that a wife cannot recover for loss of consortium of her husband. The change taking place in the authorities appears to us to be overwhelming.

An acceptance of the change in this doctrine poses, however, a question as to the recovery of the wife for the loss of support of her husband, along with what we have designated as loss of consortium. In our opinion, consortium does not include that monetary value of the direct support owed by a husband to a wife. The duty of the husband to support the wife and children has always been considered separately from that of consortium, and in some instances such support is separately enforceable against the husband.

Some courts do recognize the right of a wife to recover along with loss of consortium, the loss of support from the husband, but where this occurs there is the risk and probability of double recovery against the tort feasor or wrong-doer.

The husband at law is entitled to recover for loss of earnings and earning power, out of which his wife is entitled to his support. To permit the wife also to recover against the third party wrong-doer would create a double liability for a portion of the damages. Some courts have said that the action should be brought jointly by husband and wife. Other courts have said the wife's damages for loss of monetary support should be deducted from the recovery of the husband if she recovers first. All of these pose difficult problems in calculating and making deductions. *Thill* v. *Modern Erecting Co.* (Minn., 1969), 170 N. W. 2d 865; *Deems* v. *Western Md. Ry. Co.* (1967), 247 Md. 95, 231 A. 2d 514; *Millington* v. *Southeastern Elev. Co.* (1968), 22 N. Y. 2d 498, 293 N. Y. S. 2d 305, 239 N. E. 2d 897; *Ekalo* v. *Constructive Serv. Corp. of America* (1965), 46 N. J. 82, 215 A. 2d 1.

We do not think it is necessary to get involved in such complications as set forth above with reference to recovery of support of a wife from a third party tort feasor. Where a husband recovers for loss of his earning power, we can assume the adjustment is made or has already been made for support between the married partners. The wife therefore, in such case, should not be permitted in a separate action of her own to recover for loss of support due from her husband against a third party, since her husband, being alive, has a right to maintain an action that will cover all his earnings and therefore his support due her. We point out that in the event of the death of the husband, a recovery can be made under the death statute, out of which all those dependent upon him for support will share. Burns' Ind. Stat. Anno. § 2-403.

We therefore hold that a wife in this state is entitled to recover for loss of consortium against a wrong-doer who has injured her husband, but she is not entitled to recover for loss of support due from the husband to such wife in such action.

We further hold that such cases as *Boden* v. *Del-Mar Garage* (1933), 205 Ind. 59, 185 N. E. 860; *Burk* v. *Anderson* (1952), 232 Ind. 77, 109 N. E. 2d 407; and *Miller* v. *Sparks* (1964), 136 Ind. App. 148, 189 N. E. 2d 720, can no longer be considered as the law of this state with respect to the denial of the right of a wife to recover for loss of consortium.

The petition to transfer to this Court is granted and the cause is reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

DeBruler, C.J., Hunter and Givan, JJ., concur. Jackson, J., concurs in result.

NOTE.—Reported in 252 N. E. 2d 800.