Jack M. GREENE, Appellant–Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Ed O'Korn and Pearl Patterson, Appellees–Defendants.

No. 18A02–9007–CV–422 [1].

Court of Appeals of Indiana,
Fifth District.

June 17, 1991.

Rehearing Denied Aug. 1, 1991.

David S. McCrea, McCrea & McCrea, Bloomington, for appellant-plaintiff.

James R. Fisher and Ronald R. Hull, Ice Miller Donadio & Ryan, Indianapolis, for appellees-defendants.

BARTEAU, Judge.

Jack Greene's wife Ellen was injured while working at the Westinghouse factory in Muncie, allegedly due to removal of a

---

**1.** This case has been diverted to this office by order of the Chief Judge.

safety bar on a machine. He sued Westinghouse for loss of consortium. The court below granted Westinghouse's Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Greene appeals.

For its motion to dismiss, Westinghouse argued that Ind.Code 22–3–2–6, the "exclusivity" section of the Indiana Worker's Compensation Act (Act), bars a cause of action for loss of consortium advanced by the spouse of an employee injured at work. Westinghouse cited as controlling precedent the construction of I.C. 22–3–2–6 in *Stainbrook v. Johnson County Farm Bureau, Coop. Ass'n* (1954), 125 Ind.App. 487, 122 N.E.2d 884, (*in banc*), *trans. denied.* On appeal, Greene concedes that *Stainbrook* is on all fours with his case and adverse, but argues that *Stainbrook* was wrongly decided and should no longer be followed.[2]

The statute in question, I.C. 22–3–2–6, limits the rights and remedies of employees injured on the job:

> The rights and remedies granted to an employee subject to [the Act] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under [statute for compensation for victims of violent crimes].

I.C. 22–3–2–6.

Exclusivity works a compromise—persons injured at work can expect compensation regardless of fault, and therefore free of the complexities and delay of legal process, although perhaps less than might be recovered in a jury verdict, whereas employers agree to pay compensation even where they bear no fault for the injury, in exchange for freedom from the expense of litigation and the possibility of large jury awards to injured employees, yielding an improved ability to predict the costs of workplace injuries. In other words:

Once a workmen's compensation act has become applicable ... it affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier. This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.

*Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 971, *reh'g denied* (quoting 2A Larson, *The Law of Workmen's Compensation*, sec. 65.11, pp. 12–1—12–6 (1983)).

In *Stainbrook* a husband sued his wife's employer for the loss of her services after she was injured in the course of her employment. The trial court dismissed the action, based on the predecessor (and identical in all respects here important) statute to I.C. 22–3–2–6 (hereinafter § 6). The appellate court affirmed. Because *Stainbrook* is directly on point, a lengthy quotation of it seems appropriate:

> [Employers] argue that the rights granted by the [Act] are exclusive of all other rights and that the employer is only liable in the manner provided by the Act; that the husband's claim being dependent upon his wife's injury, an employee, he does not have a common-law right of action for his loss sustained as a result of her injuries. The [husband] contends, however, that the Act does not expressly exclude the remedy of the husband at common law for the injuries of his wife; that the husband still has such remedy and that the wife may be allowed to accept payments under the Act and at the same time, he be permitted to maintain an independent action at common law for damages for loss of services.
>
> . . . .
>
> ... Taking into account the objectives of the compensation law, and, considering it in its entirety, we construe the words, "next of kin", used in the act are

**2.** Greene also argues that the Court of Appeals invited reconsideration of *Stainbrook* in *Sanchez v. Hamara* (1989), Ind.App., 534 N.E.2d

756, *trans. denied.* Considering that the latter did not cite the former, we are inclined to disagree.

broad enough to include the husband of an employee, although technically, there was no blood relationship. In arriving at the intention of the Legislature in the passage of § 6 of the act, we believe that § 6 substituted for the common-law remedy a statutory proceeding by which an employer would be required to compensate those who suffer damage in industrial accidents regardless of fault on the part of the employer. The amount to be paid therefor being fixed by the Legislature, and, upon compliance with the Act, the employer was relieved of all further liability in the premises including rights of third parties.

The basic principle of the Compensation Act is based upon the proposition that the common-law rule of liability for personal injuries incident to the operation of industrial enterprises based upon negligence of the employer with its defenses of contributory negligence and assumption of risk is inapplicable to modern conditions of employment. To allow a common-law recovery for loss of consortium merely because such an action is not expressly mentioned in the body of the Act, would make the liability of the employer uncertain and indeterminate. To so interpret the Act would defeat the real intent of the Legislature.

... This seems to us to be the rational consequence of a changed relationship by consent of the parties affected under the Act whereby the employer becomes immuned from liability for the tort in consideration of the payment of compensation at a statutory rate regardless of fault.

*Stainbrook*, 122 N.E.2d at 886–87.

The *Stainbrook* construction of the words "next of kin" to include a husband was not novel, but rather was dictated by *McDonald v. Miner* (1941), 218 Ind. 373, 32 N.E.2d 885, which held that the husband of a wife who died from an injury suffered at work could not recover damages in tort for wrongful death. Thus, the facts of *McDonald* placed the case squarely within the plain, express language of § 6.

In contrast, *Stainbrook* broke new ground by extending the exclusivity of § 6 to "a common-law recovery for loss of consortium" despite that "such an action is not expressly mentioned in the body of the Act...." *Stainbrook, supra.* Therein rests the essence of Greene's complaint, that *Stainbrook* overextended the plain meaning of the words of § 6. Greene contends that the words in § 6 "on account of personal injury or death by accident" limit the preclusion of § 6 to tort suits brought by an injured employee or, if the employee dies as a result of the workplace injury, to wrongful death actions brought by the decedent employee's personal representative, dependents, or next of kin.

To support the argument, Greene cites *Evans v. Yankeetown Dock.* In *Evans,* an employee was fatally shot by a co-worker while both were on company premises. The issue was whether the death of Evans was "by accident," thereby triggering a § 6 limit to the remedy. In resolving the case, the supreme court considered whether "accident" referred to an unexpected cause or an unexpected result. Thus, we find *Evans* inapposite on the question whether § 6 precludes a loss of consortium action.

■ Greene further argues that *Stainbrook* was wrong because construing § 6 to preclude a loss of consortium action fails to acknowledge the importance of the marital relationship, citing *Zablocki v. Redhail* (1978), 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618 (right to marry is "of fundamental importance"); *Loving v. Virginia* (1967), 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (marriage is "one of the 'basic civil rights of man,' fundamental to our very existence and survival" (quoting *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655); and *Maynard v. Hill* (1888), 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654 (marriage is "the most important relation in life"). We fully agree that the law must protect the marital relationship, and we observe that the term loss of consortium, far from expressing the idea of a "rider" appended to the negligence suits of mar-

ried plaintiffs, can indeed entail significant harm to the spouse of a plaintiff. For example, the foremost element in loss of consortium is disruption in conjugal intercourse, which is a matrimonial benefit of constitutional magnitude. *See Griswold v. Connecticut* (1965), 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. Deprivation of conjugal relations may cause mental anguish to both partners, which is another aspect of damages in loss of consortium actions. Moreover, loss of consortium involves loss of the injured spouse's companionship and services in maintaining the household. These losses may become permanent, depending on the severity of the injury, and are compounded where the couple has dependent children. "[C]onsortium does not consist alone of intangible mental and emotional elements, but embraces within its ambit also services and charges which one partner in the marriage performs for the other and have a monetary and pecuniary value." *Troue v. Marker* (1969), 253 Ind. 284, 291, 252 N.E.2d 800, 805.

With the exception of *Maynard*, the cases cited in the previous paragraph are post-*Stainbrook*, and reveal an increasing judicial solicitude for the rights of the individual marriage partners, and a recognition that the marital relationship merits constitutional protection against excessive state regulation. *Stainbrook* dates from 1954. In 1965, *Griswold* held a state may not prohibit the use of contraceptives by married persons. *Loving*, in 1967 held miscegenation laws violate both equal protection and due process of the fourteenth amendment to the federal constitution, because freedom to marry is a fundamental liberty. In 1969, our supreme court in *Troue* recognized a wife's right to sue for the loss of her husband's services. *Zablocki*, 1978, held a state law prohibiting the marriage of a person in arrears on child support obligations arising from a prior marriage violates equal protection. In light of such cases, *Stainbrook* appears open to criticism in that it represents an anachronistic view of the value placed by the law on the marital relationship. In addition, *Stainbrook* seems weak on another front. The opinion recognized that a husband's right

to sue for the loss of his wife's consortium is a common-law action that was not expressly mentioned in § 6, yet nevertheless construed § 6 to bar such an action. In doing so, *Stainbrook* deviated from the venerable maxim "[s]tatutes in derogation of the common law are ... to be strictly construed...." *Helms v. American Sec. Co. of Indiana* (1939), 216 Ind. 1, 22 N.E.2d 822, 824.

However, there are other principles of construction. For example, it is fundamental that courts construing statutes should strive to implement legislative intent:

> In construing an Indiana statute, our duty is to ascertain and give effect to the intent of the legislature. In doing so, we must give meaning to the language used, where that meaning is clear and unambiguous. Where the meaning of the statute is ambiguous, however, or where one or more constructions are apparently possible, we must construe the statute so as to arrive at the apparent intention of the legislature which is consistently revealed in all sections of the act, and consistent with all other statutes passed by the legislature.

*Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207, 210, *reh'g denied.*

We perceive, in concurrence with *Stainbrook*, one overarching legislative intent revealed in the Act—the creation of a system not based on fault for compensation of workplace injuries. Construing § 6 as no bar to loss of consortium actions would upend that intent, because the loss of consortium action would necessarily inject the question of fault—although a loss of consortium action is to some degree independent of any underlying action, *see Rosander v. Copco Steel & Eng'g Co.* (1982), Ind.App., 429 N.E.2d 990, *trans. denied,* it is cardinal that the loss of consortium plaintiff cannot prevail without proving the defendant's negligence-based liability for the underlying injury. *See Board of Com'rs of Cass County v. Nevitt* (1983), Ind.App., 448 N.E.2d 333, 342, *trans. denied.* To prove negligence would require a trial, thereby subjecting employers to litigation arising from workplace injuries and

confounding the legislative intent behind the Act. Such a result would seem to disguise the "wolf" of suits for employees' injuries in the "sheep's clothing" of spouses' loss of consortium claims, even though the loss of consortium action seeks recovery for harm distinct from the underlying personal injury.

There is no reason to believe that when creating the Act, the legislature focused its intent on precluding loss of consortium suits by the spouse of an injured employee. Rather, it appears the legislature intended generally to eliminate fault as a basis of recovery in whatever form the issue might arise. *See Evans v. Yankeetown Dock Corp., supra* (quoting Larson). It is untenable to argue that because the legislature perhaps did not specifically intend to abolish a husband's loss of consortium action then it follows that § 6 should be read to allow such an action.[3]

At oral argument, a question was raised whether § 6 contravenes the due process clause of the Indiana Constitution, which states "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Ind. Const. art. I, § 12. Greene declined to adopt this as a basis for his argument, perhaps because of an awareness that other plaintiffs have not prevailed with arguments that art. I, § 12 prohibits abrogation of common-law rights and remedies, or, that the clause requires the legislature to create a *quid pro quo* when it eliminates or restricts a remedy found in the common law. *See Dague, supra; Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763.

Westinghouse at oral argument countered Greene's "importance of the marital relationship" argument by forecasting an undesirable consequence of construing the Act to allow loss of consortium suits. The suggestion was made that such a construction would incite employers to hire the unmarried, to the exclusion of married applicants. We perceive little merit in the idea, but nevertheless acknowledge that its evaluation is a matter properly subjected not to judicial scrutiny, but to the investigatory powers of the legislative branch.

■ We agree with Greene that the Act's policy of compensating injured workers for lost wages, without distinguishing between married and unmarried employees, fails to recognize a separate loss incurred by the spouses of married workers. The Act turns away from recognizing the distinct nature of harm occasioned by injury to a married employee. In so doing, the Act fails to compensate for all harms flowing from workplace injuries. The spouse of the injured employee receives no *quid pro quo.*

However, we are constrained to affirm the trial court's dismissal of Greene's case. To create a remedy for the inadequacy of the Act is properly a function of the General Assembly.

AFFIRMED.

SHARPNACK and RUCKER, JJ., concur.

---

**3.** In considering whether the legislature specifically intended to bar loss of consortium actions arising from workplace injuries, we note that a wife's cause of action for the loss of her husband's consortium was not recognized in Indiana until 1969, in *Troue v. Marker* (1969), 253 Ind. 284, 252 N.E.2d 800. When the legislature adopted the Act in 1929, it therefore could not have intended a bar on the wife's suit, unless we attribute to that body the insight necessary to anticipate and foreclose a legal right still forty years from inception. Thus, construction of § 6 based on an idea that the legislature sought to eliminate specific causes of action, rather than on the predominant desire to eliminate fault, could yield an inconsistent result—wives could sue employers for loss of consortium when their husbands are injured at work, but husbands could not maintain a claim for work-related injuries to their wives.