In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4312

Norma Doerner,

Plaintiff-Appellant,

v.

Swisher International, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 99-101-C-Y/H--Richard L. Young, Judge.

Argued September 6, 2001--Decided November 28, 2001


   Before Coffey, Kanne, and Evans, Circuit
Judges.

   Coffey, Circuit Judge.  Norma Doerner
(Doerner) attempted to jump on the
tobacco-litigation bandwagon with a
novel, though meritless, claim. According
to Doerner, her ex-husband, Elmer
Doerner, smoked Swisher International's
"Sweet Perfecto" brand of cigars
compulsively, averaging four cigars per
day from the late 1960s until 1995 when
he was diagnosed with cancer of the
tongue. After Doerner's ex-husband died
at age 70 in 1997, six years after their
1991 divorce, she sued Swisher under the
Indiana Products Liability Act (IPLA).
Doerner's claim rests upon her belief
that the IPLA allows her to recover
damages from Swisher for loss of
consortium and emotional distress caused
by the death of her ex-husband despite
the fact that they had been divorced for
over four years when he was initially di
agnosed with his life-ending illness. The
trial judge easily spotted the untenable
claims, dismissing some of Doerner's
claims under Fed. R. Civ. P. 12(b)(6) and
later granting summary judgment in favor
of Swisher on the remaining claims. We
affirm.

I.  Factual Background

   On February 14, 1953, Norma and Elmer

Doerner were married in a Roman Catholic marriage ceremony. Throughout the course of their marriage, the Doerners remained active parishioners of the Catholic faith. On August 29, 1991, the Circuit Court of Gibson County, Indiana, where the Doerners resided, granted them a decree of dissolution of marriage, though they never had their marriage annulled by the Catholic Church. Despite the divorce, the Doerners continued to reside together, and only a few family members knew of the state granted termination of their marriage contract./1

In 1995, more than four years after they were divorced, Elmer Doerner was diagnosed with cancer of the tongue, which was later determined to be the cause of death in 1997. In June 1999, Doerner filed this suit in the Circuit Court of Gibson County, Indiana,/2 and in her complaint she falsely alleged that she was "the surviving spouse of Elmer E. Doerner," who had died as a result of cancer developed because he had smoked Swisher's cigar products. Doerner never stated in the complaint that her marriage to Elmer Doerner had been dissolved by the State of Indiana in 1991. Doerner's complaint included claims for 1) emotional distress, 2) loss of consortium, and 3) constructive fraud.

On August 23, 1999, Swisher filed a motion to dismiss on the grounds that Doerner failed to state any claim upon which relief could be granted and also failed to comply with the statutory requirements for bringing a wrongful death claim. In opposition to the motion to dismiss, Doerner asserted that she had brought her complaint on her own behalf under the IPLA and not for the wrongful death of Elmer Doerner.

On March 1, 2000, the trial judge granted Swisher's motion to dismiss Doerner's claim that "as a result of the progress of [Elmer Doerner's] fatal illness, and as a result of his eventual death, [she] has suffered great mental trauma . . . ." The trial judge also dismissed Doerner's constructive fraud claim that "defendant's knowing sale of unreasonably dangerous tobacco products" were not accompanied by any warning regarding the danger. The trial judge ruled that Doerner's filing of the emotional distress and constructive fraud

claims was improper as she had failed to satisfy the "physical harm" requirement of the IPLA. At this juncture in the proceeding, the trial judge declined to dismiss the loss of consortium claim, ruling that even though Doerner's counsel conceded that the Doerners were not legally married at the time of Elmer Doerner's death, "it was unclear whether the divorce completely preceded Mr. Doerner's illness. . . ."

Following discovery thereafter, Swisher moved for summary judgment on Doerner's remaining loss of consortium claim. It was undisputed that the Doerners were divorced on August 29, 1991. Symptoms of Elmer Doerner's final illness first appeared in March or April of 1995 and he was not diagnosed with cancer until October 1995, more than four years after the dissolution of the Doerners' marriage. The district court granted summary judgment in favor of Swisher, ruling that Doerner had failed to establish that "she suffered any loss during the pendency of her marriage to [decedent]." Doerner appeals.

II.  Analysis

Doerner brought her claims under the IPLA. Ind. Code sec. 34-20-1-1, et seq. To sustain a cause of action under the IPLA, Doerner was required to establish, among other things, that she suffered "physical harm" as the "user or consumer" of a product placed into the stream of commerce by Swisher. Ind. Code sec. 34-20-2-1. Physical harm includes "bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property." Ind. Code sec. 34-6-2-105. The IPLA defines a "user or consumer" to include "bystanders injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use." Ind. Code sec. 34-6-2-29.

Doerner contends that the tort doctrine of foreseeability preserves her loss of consortium claim./3 According to Doerner's theory, Swisher is liable to her because it was foreseeable to it that she could suffer an injury based upon her ex-husband's use of Swisher's cigar products. It may be true that it was "foreseeable that the spouse of a cigar

smoker would suffer a loss of consortium." Indeed, the trial judge did rule that Doerner might have a loss of consortium claim and allowed the case to proceed through discovery. But the question of "foreseeability" is limited only to the issue of whether Doerner was a "user or consumer" for purposes of the IPLA.

The IPLA, however, also required that Doerner demonstrate that she suffered "physical harm." Doerner argues that she did suffer physical harm because she lost the companionship of her ex-husband, Elmer Doerner, with whom she had a "stable and significant relationship," pointing out that she never did have her marriage annulled in the church of her faith and continued to reside with Elmer Doerner after they were divorced./4 She boasts, without the backing of any Indiana case law to support her assertion, "it is not entirely clear that as a matter of common law that Indiana would necessarily insist on a fully valid civil marriage as an absolute prerequisite to a loss of consortium claim." Quite the contrary. Indiana courts have defined consortium as the "conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection, and aid of the other in every conjugal relation." Bemis Co. v. Rubush, 401 N.E.2d 48, 63 (Ind. Ct. App. 1980) (quoting Black's Law Dictionary 712 (rev. 4th ed. 1968)), vacated on other grounds, 427 N.E.2d 1058 (Ind. 1981). A claim for loss of consortium thus grows out of the marital relationship, and is extinguished upon divorce. Planned Parenthood of Northwest Ind., Inc. v. Vines, 543 N.E.2d 654, 657 (Ind. App. Ct. 1989). Indiana courts repeatedly have reserved the right to maintain a loss of consortium claim for those who have a valid civil marriage at the time the injury arises. Troue v. Marker, 252 N.E.2d 800, 805 (Ind. 1969); Greene v. Westinghouse Elec. Corp., 573 N.E.2d 452, 454-55 (Ind. App. Ct. 1991); Planned Parenthood of Northwest Ind., Inc., 543 N.E.2d at 657. Under Indiana law, Doerner's right to consortium terminated in 1991, at the time the state granted her divorce from the decedent. Elmer Doerner did not become ill until 1995, some four years after the dissolution of the Doerners' marriage contract in the eyes of the State of

Indiana. The district court properly granted Swisher's motion for summary judgment on Doerner's loss of consortium claim because the Doerners were not legally married during the span of time of Elmer Doerner's illness.

Doerner next argues that the district court erred in requiring that she establish that she suffered a "physical harm" to support her emotional distress claim. Doerner's second argument is equally without merit. Doerner relies on Groves v. Taylor, 729 N.E.2d 569, 572 (Ind. 2000), to support her notion that the IPLA does not require a plaintiff to show of "physical harm." But Groves involved a common law tort claim, not a claim under the IPLA. The plain language of the IPLA requires that Doerner establish that she suffered a "physical harm caused by a product," regardless whether Indiana common law would have required her to do so. Ind. Code sec. 34-20-1-1. "Mental distress" does not qualify as a "physical harm" under the IPLA, and we hold that the trial court's action in dismissing Doerner's claim based on emotional distress was proper.

III.  Conclusion

Doerner's arguments are without merit. Despite her speculation to the contrary, Indiana law reserves loss of consortium claims only for husbands and wives who are joined in a valid civil marriage contract at the time of the injury but does not allow recovery in loss of consortium for the loss an ex-spouse. Doerner never established that she suffered a "physical harm," as required by the IPLA, and her argument to avoid the plain language of the IPLA is equally without foundation. The trial court's actions in dismissing Doerner's claims were proper.

AFFIRMED.

FOOTNOTES

/1 The record does not disclose the reasons for the Doerners' divorce. Neither does the record disclose why the Doerners chose to continue to live together after they divorced, nor why they never sought an annulment.

/2 Swisher promptly removed the case to the United States District Court for the Southern District

of Indiana. Federal jurisdiction is based upon the diversity of the parties, 28 U.S.C. sec. 1332(a)(1). Doerner is a citizen of Indiana. Swisher is a Delaware corporation with its principal place of business in Connecticut. The amount in controversy exceeds $75,000.

/3 We note that Doerner briefly argues that "loss of services" would appear to be a much broader term than "loss of consortium," because loss of services includes other services beyond the love and affection associated with loss of consortium. Doerner is in error. Indiana courts have consistently ruled that "consortium does not consist alone of intangible mental and emotional elements, but embraces within its ambit also services and charges which one partner in the marriage performs for the other and have a monetary and pecuniary value." See Troue v. Marker, 252 N.E.2d 800, 805 (Ind. 1969); see also Forte v. Connerwood Healthcare, Inc., 745 N.E.2d 796, 801 n.8 (Ind. 2001); Greene v. Westinghouse Elec. Corp., 573 N.E.2d 452, 454-55 (Ind. App. Ct. 1991). In any event, Doerner's complaint alleged a loss of consortium, not a loss of services.

/4 Interestingly, Doerner never alleged that she at any time suffered "physical harm" in the form of inhalation of second-hand smoke.