ATTORNEY FOR APPELLANT
Sean C. Lemieux
Fishers, Indiana

ATTORNEYS FOR APPELLEE
Kendra Gowdy Gjerdingen
Andrew C. Mallor
Bloomington, Indiana

ATTORNEYS FOR AMICI CURIAE

INDIANA CIVIL LIBERTIES UNION, INC.
Jacquelyn Bowie Suess
Indianapolis, Indiana

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Wayne C. Kreuscher
Indianapolis, Indiana

Patricia Logue
Heather C. Sawyer
Chicago, Illinois

STATE OF INDIANA
Steve Carter
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Rebecca Walker
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 53S01-0511-JV-606

IN RE PARENTAGE OF A.B.,

DAWN KING, ON HER OWN BEHALF AND
AS NEXT FRIEND OF A.B., A MINOR,

*Appellant (Petitioner below)*,

v.

S.B.,

*Appellee (Respondent below)*.

Appeal from the Monroe Circuit Court, No. 53C03-0310-JP-00613
The Honorable Kenneth G. Todd, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 53A01-0407-JV-284

**November 23, 2005**

**Sullivan, Justice.**

Dawn King seeks a judicial declaration that she is entitled to parenting time rights, child support obligations, and certain other parental rights and responsibilities with respect to a now six-year-old child, A.B. The trial court dismissed the lawsuit under the authority of Indiana Trial Rule 12(B)(6) for "failure to state a claim upon which relief may be granted." The Court of Appeals reversed, holding that by virtue of her agreement with A.B.'s mother, King is a "legal parent." In re Parentage of A.B., 818 N.E.2d 126, 132 (Ind. Ct. App. 2004). We grant transfer and thereby vacate the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

When reviewing a motion to dismiss for failure to state a claim, this Court accepts as true the facts alleged in the complaint. King's complaint indicates that, after living together for several years, Stephanie Benham and King jointly decided to bear and raise a child together. Benham was artificially inseminated with semen donated by King's brother in August, 1998, and A.B. was born on May 15, 1999. All expenses associated with the pregnancy and birth that were not covered by insurance were paid from Benham and King's joint bank account; Benham and King assumed equal roles in A.B.'s care and support until the relationship between Benham and King ended in January, 2002. King paid monthly child support thereafter and continued to have regular and liberal visitation with A.B. until late July, 2003. At that point, Benham unilaterally terminated visitation and began rejecting King's support payments.

On October 31, 2003, King filed this lawsuit, seeking to be recognized as A.B.'s

2

legal parent with the rights and obligations of a biological parent. Alternatively, King contended that, even if King is not A.B.'s legal parent, King nonetheless acted in loco parentis and in a custodial and parental capacity entitling King to, at a minimum, continued visitation with A.B. Benham moved to dismiss the complaint for failure to state a claim upon which relief may be granted. Ind. Trial Rule 12(B)(6). The trial court granted that motion on March 8, 2004. The Court of Appeals reversed. In re Parentage of A.B., 818 N.E.2d at 133. We grant transfer, thereby vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

In reviewing a 12(B)(6) motion to dismiss, we look at the complaint in the light most favorable to the plaintiff, with every inference drawn in its favor, to determine if there is any set of allegations under which the plaintiff could be granted relief. State Civil Rights Comm'n v. County Line Park, Inc., 738 N.E.2d 1044, 1049 (Ind. 2000) (citing Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc., 716 N.E.2d 943, 945 (Ind. 1999); Ratliff v. Cohn, 693 N.E.2d 530, 534 (Ind. 1998); Cram v. Howell, 680 N.E.2d 1096, 1096 (Ind. 1997)). A dismissal under Trial Rule 12(B)(6) is improper unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. County Line Park, 738 N.E.2d at 1049 (citing Thomson Consumer Elecs., Inc. v. Wabash Valley Refuse Removal, Inc., 682 N.E.2d 792, 793 (Ind. 1997)). Dismissals under Trial Rule 12(B)(6) are "rarely appropriate." County Line Park, 738 N.E.2d at 1049 (citing Obremski v. Henderson, 497 N.E.2d 909, 910 (Ind. 1986)).

That is our conclusion here. Our 2002 decision, In re Guardianship of B.H., in which this Court affirmed a trial court's grant of permanent guardianship to two children's stepfather after the death of their mother, rejected the children's biological father's motion to dismiss the stepfather's request. 770 N.E.2d 283 (Ind. 2002). Several things are clear from B.H. First, Indiana courts have authority to determine "whether to place a child with a person other than the natural parent," id. at 287, which we hold necessarily includes the authority to determine whether such a person has the rights and obligations of a parent. Second, Indiana law "provide[s] a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cul-

3

tural, and biological considerations that significantly benefit the child and serve the child's best interests." Id. As such, Indiana trial courts are accorded deference in their determinations as to children's best interests in these circumstances. Id. At least some of the relief sought in this case falls within that which B.H. grants persons other than natural parents to seek and Indiana trial courts, where appropriate, discretion to award.

Given the procedural posture of this case and the guidance provided by B.H., we find it unnecessary to comment further on the facts of this particular case or King's entitlement, if any, to the relief sought. We do not deem ourselves to have decided the various legal issues raised by the dissent.

As previously mentioned, we grant transfer, vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A). We also reverse the trial court's dismissal of King's complaint and remand this case to the trial court for further proceedings.

Boehm and Rucker, JJ., concur. Shepard, C.J., concurs with separate opinion. Dickson, J., dissents with separate opinion.

**Shepard, Chief Justice, concurring.**

I write separately only to highlight what the majority has already said about the limited nature of today's ruling, which I see as far more modest than my friend Justice Dickson suggests. Whether any element of King's claims will be legally sustainable remains an open question for resolution after a hearing on the merits.

**Dickson, Justice, dissenting.**

The majority opinion today permits a declaratory judgment action to be pursued by a woman seeking to establish her "co-parentage" of a minor child conceived by artificial insemination and born to another woman during the two women's relationship as domestic partners. I dissent, believing that the plaintiff's action fails to state any claim upon which relief can be granted. Indiana Trial Rule 12(B)(6). I reach this conclusion for several reasons, chiefly the following: (1) permitting this proceeding to continue disregards Indiana's adoption laws, particularly the statutory requirement for the mother's consent to an adoption; (2) reinstating this declaratory judgment action raises grave questions regarding whether such device may be used by various other people, who are not natural parents of a child, to bypass our adoption laws and to intrude upon the lawful parental rights of others; and (3) advancing special policy interests that have not become well-established changes in society exceeds an appropriate exercise of common law jurisprudence.

### Existing Adoption Law Controls

In the present case, A.B. was born out of wedlock. During the pendency of King's adoption petition the parties separated and the natural mother, S.B., withdrew her consent for King's adoption of A.B. King thereafter dismissed her adoption petition. But she now seeks to accomplish the same result (obtaining a judicial declaration that she is A.B.'s parent, and thus entitled to interfere with the natural mother's parental rights) through a declaratory judgment action.[1] In dismissing King's complaint "for Declaratory Judgment to Establish Parentage," the trial court noted that adoption was the only method by which King could seek to co-parent A.B. Appellant's App'x. at 7. In response to

---

[1] King's complaint for declaratory judgment seeks the following relief: (1) "to be declared A.B.'s legal second parent under the law," Appellant's App'x. at 14; (2) to have her rights "with respect to custody, visitation, support, and other parent-child matters . . . determined in the same manner as those of a non-biological parent and child in the context of heterosexual couple who conceive a child through artificial insemination," *id.* at 15; (3) to be "awarded joint legal custody and visitation with A.B. and that she provide financial support for A.B." *id.* at 16, 17; and (4) "to be awarded reasonable and liberal visitation with A.B." *id.* at 17.

King's appellate brief, S.B. points to Indiana adoption law and asserts that King cannot be A.B.'s legal parent. Appellee's Brief at 5-6. But the majority opinion is silent regarding its conflict with Indiana adoption law and the statutory prerequisite for the mother's consent.

The Indiana legislature has determined the persons eligible and the procedures to be followed when a person not a child's parent wishes to become the child's legal parent. With respect to a child born out of wedlock, an adoption petition may be granted only if a written consent to the adoption has been executed by the mother and, under certain circumstances, the father. Ind. Code § 31-19-9-1(a)(2).[2] This requirement of maternal consent is recognized under our state adoption laws regardless of the nature of any relationship that may have developed between the child and the person seeking to adopt such child. The fact that the child has only one living or known parent does not alter the maternal consent requirement for an adoption.

In addition to the statutory requirement for a mother's consent, Indiana adoption law expressly addresses stepparent adoptions, permitting them if "the adoptive parent of a child is *married* to a biological parent of the child." Ind. Code § 31-19-15-2(a) (emphasis added). In all other cases, an adoption operates to divest the child's parents of all rights with respect to the child. Ind. Code § 31-19-15-1. In addition, same-sex marriages are prohibited in Indiana. Ind. Code § 31-11-1-1. Even if King and S.B. had not separated but were continuing to live together as same-sex domestic partners, it is my view that King could not be lawfully adopt A.B. because stepparent adoptions require the adoptive parent to be married to the child's parent, and same-sex marriages are not permitted.[3] If

_____

[2] A parent's consent to adoption is not required under various circumstances such as abandonment or failure to provide for care or support, as prescribed by statute. *See* Ind. Code § 31-19-9-8. And consent is not required of a child's parent whose parental rights have been terminated to protect the child or for other reasons. *See* Ind. Code §§ 31-35-6-4(a)(2), 31-35-2-4, 31-35-1-1, 31-35-3-4. None of these exceptions are alleged in this case.

[3] This reasoning was not followed, however, and contrary results were reached in two Court of Appeals opinions from which review by this Court was not sought. In In re Adoption of M.M.G.C., 785 N.E.2d 267 (Ind. Ct. App. 2003), *trans. not sought*, the Court of Appeals authorized a woman to adopt children previously adopted by her same-sex domestic partner, but with the partner's consent. In the other case, Matter of Adoption of K.S.P., 804 N.E.2d 1253 (Ind. Ct.

7

a stepparent adoption is contrary to statute for same-sex domestic partners living to-gether, it is likewise illegal after the termination of the couple's relationship.

I do not agree with the majority's application of our holding in In re Guardianship of B.H., 770 N.E.2d 283 (Ind. 2002), to the facts of this case. In B.H., a guardianship proceeding, this Court did not grant status as a "co-parent," but merely converted a tem-porary guardianship to permanent status for the stepfather of two teenage children follow-ing the death of his wife, the children's natural mother, notwithstanding the opposition of the child's non-custodial but natural father. The mother had been the custodial parent of the children for seven years and, along with the stepfather, had provided a home for the children for four years prior to her death. Acknowledging the strong presumption that a child's interests are best served by placement with a natural parent, we required that a guardian seeking custody of the child must clearly and convincingly overcome this pre-sumption by evidence proving that the child's best interests are substantially and signifi-cantly served by placement with the guardian. Our decision in B.H. did not diminish the parental rights possessed by the natural father before the death of his ex-wife, the chil-dren's mother and custodial parent. It did not create a new non-statutory status of "co-parent."

Unlike B.H., permitting King access to the courts to obtain parental status or privileges violates both the statutory requirement for a mother's consent to an adoption of a child born out of wedlock and the spirit and intent of those provisions permitting a stepparent adoption only by a person of the opposite sex who is married to the biological parent.

App. 2004), *trans. not sought*, a woman was permitted to seek adoption of two children born to the woman's same-sex domestic partner. For reasons expressed herein, I believe that both M.M.G.C. and K.S.P. were incorrect. One additional Court of Appeals decision has upheld the validity of a same-sex adoption. Mariga v. Flint, 822 N.E.2d 620 (Ind. Ct. App. 2005) *trans. pending*. Because Mariga is based on K.S.P., M.M.G.C., and the Court of Appeals decision in the present case, I believe that the basis for the court's decision was erroneous. But I agree with its result that operates to deny the request of a same-sex adoptive parent seeking relief from a sup-port obligation she voluntarily undertook when she sought and obtained a same-sex adoption with the consent of the child's mother. A person who voluntarily agrees to a support obligation and thus induces another party to rely and act thereon is estopped from denying this obligation. Levin v. Levin, 645 N.E.2d 601, 604-05 (Ind. 1995).

8

**Troublesome Consequences Raised**

I am concerned that the majority opinion today may open a veritable Pandora's Box of troublesome questions regarding who may seek its new remedy of adoption, or of interference with a custodial parent's rights, by declaratory judgment, and notwithstanding the refusal of consent by the child's custodial parent.

Is this holding limited to only former same-sex domestic partners? Such limitation would raise grave questions under the prohibition of special privileges provision in Article 1, Section 23 of the Indiana Constitution. Current and former co-habiting heterosexual partners presently have no statutory right to adopt without the consent of the child's mother, but today's decision places these well-established principles in jeopardy.

In addition, the majority's opinion may also encourage future claims that any person who may have resided and developed bonds of affinity with a minor child be permitted to compel an adoption or interference with natural parental rights by declaratory judgment despite the mother's refusal of consent. Will this remedy thus be available, for example, to grandparents, siblings, aunts, uncles, in-laws, foster parents, and former or current spouses or domestic companions, etc.? If so, today's opinion may create an enormous opportunity for future litigation disruptive to the stability and security of children.

**Misapplication of Common Law**

I also believe that with its opinion today, the majority has exercised this Court's common law jurisdiction in a manner inconsistent with the proper function and role of the common law. The common law may not supersede statutory law, and the common law properly serves only to reflect established social change.

The common law is a valuable and important body of law that consists of court

9

decisions in matters not governed by statutory law.  But resort to common law jurisprudence is inappropriate when employed to supersede or alter existing statutes regarding the establishment of parental status over the child of another, which has been governed by adoption statutes in Indiana for at least 150 years.  *See, e.g.,* Indiana Acts 1855, c. 56, § 1, p.122; Hunter v. Bradshaw, 209 Ind. 71, 72, 198 N.E. 73, 74 (1935).  Adoption law is strictly statutory, the right of adoption being unknown at common law.  In Re Perry, 83 Ind.App. 456, 464-65, 148 N.E. 163, 166 (1925); *see also* Robbins v. Baxter, 799 N.E.2d 1057, 1060 (Ind. 2003).

As to non-statutory matters already governed by common law, modification is appropriate to reflect clearly established, widespread social changes, not to advance or favor one movement over another.  As Chief Justice Shepard wrote for the Court in Bartrom v. Adjustment Bureau, Inc., 618 N.E.2d 1 (Ind. 1993):

> While the Court of Appeals is correct in observing that Indiana courts should not hesitate to modify common law rules when their existence cannot be justified in light of the realities of modern life, such determinations should be consonant with the evolving body of public policy adopted by the General Assembly.

*Id*. at 7.

In 1972, this Court in Brooks v. Robinson, 259 Ind. 16, 284 N.E.2d 794 (1972), abolished the doctrine of interspousal immunity, noting the absence of legislation.  *Id*. at 22, 284 N.E.2d at 797.  We pointed out that "the common law doctrine of interspousal immunity . . . is, and always has been, subject to amendment, modification, or abrogation by this Court."  *Id*. at 24, 284 N.E.2d at 798.  In abolishing the doctrine, this Court was not attempting to transform social mores or to impose certain judges' social policy preferences, but we were rather seeking only to make the law consistent with the prevailing norms of society.  "The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs."  *Id*. at 22-23, 284 N.E.2d at 797.

In another significant opinion, Troue v. Marker, 253 Ind. 284, 252 N.E.2d 800

(1969), this Court modified the common law to hold "that a wife in this state is entitled to recover for loss of consortium against a wrong-doer who has injured her husband." *Id*. at 294, 252 N.E.2d at 806. Recognizing that "[t]he common law must keep pace with changes in our society, and in our opinion the change in the legal and social status of women in our society forces us to recognize a change in the doctrine with which we are concerned in this opinion," the Court grounded its decision to alter the common law on the fact that "[t]he change taking place in the authorities appears to us to be overwhelming." *Id*. at 293, 252 N.E.2d at 804, 806.

But there is no such "overwhelming" change in current society regarding the acceptance, approval, and substantial prevalence of same-sex parenting arrangements. The common law should not, in my opinion, be used to provide non-statutory privileges arising out of same-sex domestic relationships when, as here, not only is Indiana public opinion deeply fractured, but also a significant majority of Indiana citizens favor a public policy that does not promote same-sex families. Indiana law declares that "[o]nly a female may marry a male" and that "[o]nly a male may marry a female." Ind. Code § 31-11-1-1. Furthermore, our General Assembly has just adopted, by an overwhelming vote,[4] a resolution calling for the addition of a new provision to the Indiana Constitution that would provide: "(a) Marriage in Indiana consists only of the union of one man and one woman. (b) This Constitution or any other Indiana law may not be construed to require that marital status or the legal incidents of marriage be conferred upon unmarried couples or groups."

The common law does not exist to enable judges to advance or impose social policies that are not generally accepted. It functions, rather, to enable the courts, in the absence of legislation, to keep pace with generally established societal changes. The recognition and promotion of same-sex families and parenting structures remains a controversial and strongly disapproved social policy in Indiana. It does not constitute estab-

---

[4] This proposed constitutional amendment, Senate Joint Resolution 7, passed the Indiana Senate on February 21, 2005, by a vote of 42 to 8 (84% approval), and on March 22, 2005, it passed the Indiana House of Representatives by a vote of 76 to 23 (76% approval).

lished social change. As the judicial branch of government, I believe that Indiana courts should therefore refrain from implying legitimacy or judicial approval for same-sex domestic relationships as family entities suitable for parenting children.

**Conclusion**

As a co-equal and independent branch of government, the judiciary must be empowered to truly interpret and apply our constitutions and laws without concern for political or other reprisal. *See* Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005). Public trust and confidence in an independent judiciary is enhanced when judges exercise their authority with restraint and respect for the role and function of the legislative branch to decide questions of public policy. *Id.* The judiciary must respect the fact that the General Assembly is likewise a co-equal and independent branch. *Id.* Having enacted a body of law that prescribes the eligibility and procedure applicable for persons seeking to obtain parental rights with respect to another person's child, the legislature's determination should be respected and followed by the judicial branch.

Courts "must be careful to avoid substituting their judgment for those of the more politically responsive branches." Sanchez v. State, 749 N.E.2d 509, 516 (Ind. 2001). "In our separation of powers democracy, the constitution empowers the legislative branch to make law." Baldwin v. Reagan, 715 N.E.2d 332, 337-38 (Ind. 1999). "The legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature." State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992). As explained by former United States Chief Justice John Marshall: "Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or in other words, to the will of the law." Osborne v. Bank of the United States, 9 Wheat. 738, 866 (1824). Of course, the General Assembly may always enact legislation that overrides the majority opinion's exercise of common law authority in this case. McIntosh v. Melroe Co., 729 N.E.2d 972, 977 (Ind. 2000) ("This Court has long recognized the ability of the General Assembly to modify or abrogate the common law.").

12

Because I believe that the plaintiff's action is precluded by existing statutes governing adoption, and that the judiciary serves best when it refrains from intruding into the legislature's prerogative to determine public policy on social issues, I respectfully dissent.